THE STATE v. HARRY VAUGHAN, GEORGE RYAN and EDWARD RAYMOND, Appellants.

### Division Two, May 14, 1907.

1. **CONSPIRACY: Indictment: Evidence.** It is not necessary, in order to the admission of evidence of a conspiracy between defendant and others, that such others be included in the indictment.

2. **MURDER, FIRST DEGREE: Escaping from Prison: Killing Guards.** Defendants who killed a penitentiary guard while they were attempting to escape from the penitentiary where they were lawfully confined, were guilty of murder in the first degree, and the court properly refused to submit to the jury instructions as to murder in the second degree. [Following State v. Vaughan, 200 Mo. 1.]

Appeal from Cole Circuit Court.—*Hon. Wm. H. Martin*, Judge.

AFFIRMED.

*E. L. King* and *Edwin Silver* for appellants.

(1) The indictment charged only the defendants with having jointly committed the homicide, and it was improper, as was done in instruction 2, to instruct on the theory of a conspiracy between the defendants and one Hiram Blake, who was not named in the indictment. Taylor v. Commonwealth, 90 S. W. 581. (2) (a) The

court erred in refusing to give at the request of defendants' instructions 7, 8, 9 and 10. We submit said instructions have the support of the following authorities: State v. May, 142 Mo. 135; People v. Knapp, 26 Mich. 112; Frank v. State, 27 Ala. 37. Where two persons conspire to fight with their fists, and one resorts to the use of a deadly weapon without the other's knowledge or consent, the other cannot be held responsible for the act of the former in so doing. State v. May, 142 Mo. 135; People v. Knapp, 26 Mich. 112; Mercensmith v. State, 8 Tex. App. 211; Frank v. State, 27 Ala. 37. (b) It is not proper or sound to hold a participant in an attempt to escape guilty of murder in the first degree where one of his associates departs from their joint plan and purpose and commits a homicide—he lacking the specific intent to kill, and the homicide not being committed in the perpetration, or attempted perpetration, of one of the offenses enumerated in section 1815, Revised Statutes 1899—he would be guilty, at most, of only murder in the second degree.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The indictment is sufficient in form and substance. In one count it charged defendant Vaughan with shooting and killing one John A. Clay, and the other defendants with being present, aiding and abetting; and, in the second count it charged that all three of the defendants shot and killed said Clay. Kelley's Crim. Law, sec. 474; State v. Wilson, 172 Mo. 423. (2) The instructions given at the request of the State were correct; they properly defined the crime of murder in the first degree, which is the only crime of which the defendants could have been convicted. Murder committed in the perpetration of another felony, or in the attempt to commit another felony, is murder in the first

degree. Even if the defendants armed themselves solely for the purpose of making their escape from prison (which no person can believe), still they were guilty of murder, which was committed as an attendant result of such effort to escape. Mayes v. People, 106 Ill. 306; State v. Bailey, 190 Mo. 288; Evans v. State, 109 Ala. 22; 2 Bishop's New Crim. Law, sec. 641; 2 Wharton's Crim. Law, sec. 1405; Martin v. State, 89 Ala. 118; Peden v. State, 61 Miss. 270; 1 Bish. Crim. Law, sec. 636; Boyd v. U. S., 142 U. S. 455; Ferguson v. State, 32 Ga. 658; State v. Walker, 98 Mo. 105; Kirby v. State, 23 Tex. App. 25; State v. Vaughan, 200 Mo. 1. (3) Neither was error committed in refusing to give instruction 7, asked by the defendants, on murder in the second degree. There was no murder in the second degree, or manslaughter, in this case; hence, said instruction was properly refused. State v. Vaughan, supra; State v. Cushenberry, 157 Mo. 182. (4) The act of breaking out, or of attempting to break out of the penitentiary, was an unlawful act and a felony in itself. R. S. 1899, secs. 2067 and 2072; State v. Johnson, 93 Mo. 317. All of the defendants and Blake having conspired to commit that felony, and working together for that purpose, the commission of murder by one of the four in the presence of the others, and while all of them were still engaged in the common undertaking, fixes the guilt for that crime upon them all.

GANTT, J.—This is the second appeal in this cause. The first is found reported in 200 Mo. 1.

The defendants were indicted at the November term, 1905, for the murder of John A. Clay on the 24th of November, 1905. When the cause was here at the October term, 1906, of this court, it was reversed for the sole reason that the circuit court refused to instruct the jury that they were at liberty to find one or more of the defendants guilty and the others not guilty as

they might deem right and proper under the instructions of the court and the evidence in the case. On the re-trial of the cause on January 12, 1907, the circuit court gave said instruction in addition to those which it gave on the former appeal, and the jury under the evidence and the instructions of the court found each of the defendants guilty of murder in the first degree as charged in the indictment. And after motions for new trial and in arrest were heard and overruled, sentenced each of the defendants separately to be hung on the first day of March, 1907. From that sentence the defendants have in due and proper form appealed to this court.

As on the former trial, the testimony on behalf of the State tended to prove that all three of the defendants and one Hiram Blake were on the 24th of November, 1905, lawfully imprisoned in the State penitentiary situated in the eastern portion of Jefferson City, Missouri. That around the penitentiary buildings and grounds, there is a high stone wall, and the entrances into the penitentiary are through the western walls. A short distance north of the north wall are situated the tracks of the Missouri Pacific Railroad and a few feet north of the tracks is the Missouri river. In the testimony of the witnesses two entrances are referred to, one being through the office in the administration building of the penitentiary, entering the grounds through an ordinary door opening into an iron cage, the other one, the wagon entrance; this last-named entrance was used by all vehicles that had occasion to go in and out of the prison walls, and consisted of two sets of double doors situated some distance from each other. On the 24th of November, 1905, Matt. W. Hall was warden, R. E. See was deputy warden and John A. Clay, Ephraim Allison, J. K. Young and John Bruner were guards at the prison. It was the duty of Mr. Clay to stand in the wagon entrance between the two double

doors, inspect the contents of the various loads that passed through said entrance, and attend to the locking and unlocking of the doors. Mr. See's duties as deputy warden required that he spend most of his time in his office, which was some seventy-five feet north of the iron cage entrance, and this entrance was some fifteen or twenty feet north of the wagon entrance. Mr. See's office was on the ground floor and opened out into the yard of the prison, and this yard opened into the stockade in which were located the prison shops where the three defendants and one Blake were working. Warden Hall and several of the prison officials were absent from the city on official business, having left Jefferson City on the forenoon of that day. About three o'clock on the afternoon of said day two gentlemen from Osage county were admitted as visitors to the prison and were sitting in the deputy warden's office talking to a prisoner, when the three defendants and Blake appeared at the door of the said office with pistols in their hands and commanded deputy warden See to hold up his hands, threatening to kill him if he refused. Mr. See endeavored to draw his pistol and one of the four convicts fired his pistol, striking See in the wrist and also wounding defendant Vaughan in the hand. Vaughan was in the act of grabbing Mr. See's hand when Blake shot at Mr. See. See was then disarmed by them, dragged out of his office and ordered to march between Blake and the defendant Vaughan to the wagon entrance; and the two visitors were also ordered to march, one by the side of the defendant Ryan and the other by the side of the defendant Raymond. The wagon entrance was reached just as the inner doors were being opened to admit a two-horse wagon into the prison yard, and the four convicts rushed through said doors, taking with them Mr. See and one of the visitors, the other visitor managed to get loose and escaped. The four convicts ordered Mr. Clay, who was on duty

at that point, to hold up his hands, which he did; they then ordered him to hold his hands up higher. Some-one in the wagon entrance then fired at Clay, striking him in the neck and killing him instantly. As the space in this wagon entrance was tolerably dark, neither Mr. See nor Weggeman, one of the visitors, could state who it was who fired the shot, but the driver of the team, Charles Woodland, testified positively that the defendant Vaughan was the first man to push into said wagon entrance and that Vaughan fired the shot. Other shots were fired by the defendants and Blake in said entrance, some of which were so close as to burn Mr. See's face with powder. These defendants then ordered See to unlock the outside doors, but he told them that he could not and did not know how, and finally suggested to them that he could show them a better way through the office. The defendants and Blake then went with Mr. See to a door that opens into this wagon entrance from the guard room, where Mr. Allison appeared at the door and ordered the men to throw up their hands, whereupon one of the four shot and killed Mr. Allison. One of the four then shouted, "Kill them all, let's shoot our way out." About that time one of them shot Mr. See in the shoulder and in the side, and he fell to the ground. One of them then said, "Captain See is dead, now get to work, we are losing time." Mr. Young was up stairs in the armory and hurriedly came down to discover the cause of the disturbance. He saw the body of Mr. Allison on the floor, and walked toward the door opening into the wagon entrance, when some one in this entrance shot him. Hearing the firing, Mr. Bruner, another guard, ran from the dining-room building to the inner doors of the entrance and looked in through a small hole in the door; some one in the wagon entrance commanded him to go away, and shot at him. Thereupon, these four convicts, having made one ineffectual effort to blow open the outer door with nitro-

glycerin, again applied it to the outer doors of the wagon entrance, and this time succeeded, and by its explosion a large strip was blown off of one of the said doors, making a hole sufficient in size for them to jump through and make their escape, which they did. After getting out of the prison, the three defendants and Blake ran together towards the Missouri Pacific railway tracks and west along said tracks toward the station. They stopped a moment to re-load their pistols and ran around on the north side of some freight cars. Captain See and the guard, Bruner, followed them towards the depot. Bruner soon came within range of them and exchanged several shots with them. He succeeded in wounding Blake in the leg. Blake was then captured and taken back to prison, where he soon died from the effects of his wound. In the meantime, the police of Jefferson City had been notified of the escape and joined in the pursuit of the three defendants herein, and after a running fire they were all three captured and returned to the prison. At the time of the capture each defendant had a 44-calibre pistol in his hand, and from forty to one hundred cartridges in his pocket; and the defendant Vaughan had a stick of dynamite, a bottle of nitroglycerin, and some fuse and caps. The State's evidence showed that Mr. Clay's death was caused by a gun-shot wound in the neck, which was made by a bullet from a forty-four calibre pistol. The defendants Vaughan and Ryan testified in their own behalf; the defendant Raymond did not testify. Vaughan and Ryan stated that a few days prior to the commission of the homicide in question, they were in the same cell in the prison and agreed with Blake and Raymond to make an effort to escape; that a friend of theirs, whose name they declined to give, had sent them the pistols, cartridges, nitroglycerin, dynamite, etc., which they took for the purpose of frightening the prison officers. They testified that it was distinctly agreed among them

that no one should be hurt or killed; they both testified, however, that they went to the deputy warden's office, and covered him with their pistols; that Blake shot Captain See in the wrist; that they marched with See to the wagon entrance where they and Blake fired their pistols a number of times; that they all ordered Mr. Clay to hold up his hands; that no one else in that hall way had any pistols or revolvers except these four and that Mr. Clay, Judge Allison and Captain See were all shot. Each of the two defendants denied that he shot either Clay or Allison. They expressed the opinion that Blake did it. They admitted that they blew open the outside door with nitroglycerin, passed through the opening, ran west to the freight depot, jumped into a wagon and carried on a running battle with the officers and police and citizens who were pursuing them, and that finally they were captured with their revolvers in their hands. The court gave the same instructions on this trial as on the former trial, save and except, as already noted, that the court gave the instruction that the jury might find one or more of the defendants guilty and others not guilty, as they might deem right and proper under the instructions of the court and the evidence in the case.

1.    It is insisted that the court erred in giving the instruction 2 for the State, for the reason that this instruction authorized the jury, if they found that the defendants and another person, named Hiram Blake, entered into the criminal conspiracy to escape from the prison, and while acting in concert with each other, and in the furtherance of a common design to make such escape, either of the said four persons, did in the presence of the other three, wilfully, feloniously, premeditatedly, deliberately and of malice aforethought kill John A. Clay, to find all three of the defendants guilty, because the said Blake was not named in the indictment. The proposition is thus advanced that, in order

to admit testimony as to a conspiracy between the defendant and other persons, such other persons must also be included in the indictment. Both at common law and in this country, the law is well settled adverse to this contention. [State v. Collins, 181 Mo. l. c. 261; State v. Kennedy, 177 Mo. l. c. 164, 165; State v. Boatright, 182 Mo. l. c. 46, and authorities there cited.]

2. It is further contended that the court erred in refusing instructions 7, 8, 9 and 10, asked by the defendants in which the defendants sought to have the court submit to the jury that if the defendants killed Mr. Clay with premeditation, and malice aforethought, but without deliberation, they were only guilty of murder in the second degree. And the further proposition that although the jury might find and believe all three of the defendants and Blake were convicts in the Missouri State penitentiary, and while so confined in said prison, they agreed and combined together to effect their escape therefrom, but it was expressly understood and agreed among them that no officer or guard of the prison should be killed or injured, but that said escape should be effected solely by means of intimidating the officers and guards, and that while said convicts were carrying out their said purpose, the deceased, John A. Clay, was killed by one of said defendants, and that this killing was a departure from the purpose and plan agreed upon by said Blake and the defendants, then the defendant or defendants not so instigating, counseling, abetting, aiding or advising said killing, was not guilty of the offense charged in the indictment, but that the party killing said deceased alone was guilty. These instructions were fully considered on the former appeal in this case, and it was ruled that the court properly refused them on the ground that according to their own testimony, in addition to that of the State, they were

all equally guilty of murder in the first degree and of no less grade of that offense. With the conclusion reached at that time we are entirely satisfied. While it is true that on this appeal the defendants Vaughan and Ryan testified that it was agreed between them that they would make an effort to escape and that a friend of theirs, whose name they refuse to divulge, had furnished them with pistols, cartridges, nitroglycerin, dynamite, etc., to enable them to make their escape, and that it was agreed between them that no officer of the prison should be hurt or killed, still, they testified that each of them went armed with a loaded revolver into the deputy warden's office and without warning to him covered him with their pistols, and that when he attempted to draw his pistol, one of their number, Vaughan, grabbed him by the wrist, and another of them, Blake, shot Warden See through the wrist, and that they together thereupon seized the deputy warden and two visitors, who were then in the office, and compelled him and the visitors to accompany them to the wagon entrance of the penitentiary, and that immediately upon entering this entrance they compelled the deceased, Mr. Clay, to throw up his hands, and then and there one of their number, without the slightest provocation on the part of the deceased, shot and instantly killed him. Not only this, but they shot the deputy warden twice and killed Captain Allison and wounded another guard, Mr. Young, and shot at another guard, Bruner, who was coming to the assistance of the deputy warden. Thus, it appears that their conspiracy was to commit a felony and that in the prosecution of the purpose of that conspiracy they shot and killed two of the officers of the State and seriously wounded another, and under such circumstances the law of this State is that they were each and all of them guilty of murder in the first degree in killing the two guards Clay and Allison, and there is nothing to reduce

their offense to murder in the second degree. [State v. Vaughan et al., 200 Mo. 1. c. 19; State v. William Walker, 98 Mo. 95, 1. c. 107.]

In view of their own testimony and all the evidence on the part of the State as to their acts and conduct, their statements that they did not intend to hurt or kill any one amounted to nothing in the eyes of the law and was so utterly inconsistent with the physical facts of the case that the circuit court would not have been justified in submitting to the jury that their offense was anything less than murder in the first degree, and this we ruled on the former appeal, and we are still of that opinion.

3. A careful consideration of all the evidence discloses no error in the admission of testimony nor in any rejection of any offered on behalf of the defendants. All questions as to the evidence were fully settled by the opinion of Judge BURGESS on the former appeal, and it is unnecessary to repeat what was said at that time, or to discuss the various authorities so carefully collected by the Attorney-General sustaining our rulings on that occasion.

No error appearing, the judgment of the circuit court is affirmed and the sentences which the law pronounces are directed to be carried into execution. *Fox, P. J.,* and *Burgess, J.,* concur.