THE STATE v. OLA LINDSEY, Appellant.—62 S. W. (2d) 420.

Division Two, June 24, 1933.

*Baker & Baker* for appellant.

*Roy McKittrick*, Attorney-General, and *Franklin E. Reagan*, Assistant Attorney-General, for respondent.

142

FITZSIMMONS, C.—Appellant, upon a separate trial in the Circuit Court of Boone County, was found guilty of murder in the first degree. His punishment was fixed at imprisonment in the penitentiary for life. From the sentence and judgment he appealed. The charge of murder in the first degree was lodged by a joint indictment against appellant, Ola Lindsey and Floyd Brown, Roy Stephens and Norris Stephens for the death of Omar Cook who was beaten with a stick of wood and an iron stove shaker in the county jail of Boone County at Columbia on November 30, 1931. Appellant, Lindsey, and Floyd Brown, Norris Stephens and the deceased Cook were prisoners in the jail at the time of the assault. Appellant and Brown escaped from the jail soon after the assault. Norris Stephens made an unsuccessful attempt to escape. Two preliminary assignments of error merit first consideration.

I. Appellant attributes error to the order of the court in overruling his motion to quash the panel from which the trial jury subsequently was chosen. The ground of the motion was that, on March 16, 1932, the day set for appellant's trial, Norris Stephens, one of the codefendants, was brought into court and he entered a

plea of guilty to murder in the second degree in the presence and hearing of the members of the panel, who had been subpoenaed in appellant's case. Appellant in his motion alleged that this was done with the connivance and knowledge of the prosecuting attorney for the purpose of influencing the jury to the prejudice of appellant. A hearing being had on the motion to quash, the prosecuting attorney testified that he was informed by the sheriff, a few minutes before court convened on the day of appellant's trial, that a witness whom the State desired to call could not be found. The prosecuting attorney decided to have Norris Stephens to testify substantially to the same facts as he had expected to prove by the missing witness. He had an understanding of several weeks duration with the attorney for Stephens that the latter would plead guilty. Therefore, when he learned of the absence of the material witness, he arranged with the attorney for Stephens to enter the plea of guilty at once in order that Stephens might be a competent witness. The prosecuting attorney also testified that what he and counsel for Stephens said to the court in connection with the plea of guilty was out of the hearing of the members of the panel and that in these statements no reference was made to the fact that the Stephens case was connected with the case of appellant. The testimony of the prosecuting attorney was not controverted. The essential allegations of the motion to quash were not supported by the evidence and the trial court properly overruled that motion and also appellant's motion for a continuance which was grounded substantially upon the same reasons as the first motion.

II. The second assignment of error is aimed at the ruling of the court upon an objection of appellant's counsel to parts of the prosecuting attorney's opening statement to the jury. The prosecuting attorney stated that appellant and his codefendant Brown discussed with a fellow prisoner named Roy Fite, several days before the assault upon Cook and their escape their scheme to break jail; that they said to Fite that Roy Stephens (a codefendant), was to bring them saws; that Omar Cook (the fellow prisoner who later was killed) was a snitch. At this point counsel for appellant objected to the prosecuting attorney further stating what purported to be a conversation between Fite and Brown and appellant for the reason that the prosecuting attorney, at the preliminary hearing upon the motion to quash the panel, had stated that Roy Fite would not be a witness. The prosecuting attorney retorted that he had stated a subpoena had not been served on Fite and that he was depending on getting him back to be a witness. The court informed the prosecuting attorney that he was bound by his statement and directed him to proceed. Without further objection, the prosecutor

stated that appellant Lindsey and Brown, in their conversation with Fite, referred to Omar Cook as a snitch and said that in making their escape, it might be necessary that they kill two or three men in the jail.

Of this assignment of error, we may observe first, that counsel for appellant delayed making objection until the prosecuting attorney almost had completed that part of his statement. "We object to that statement," said counsel. "We have let it go on quite awhile," etc. Second, substantially the same facts which the prosecutor stated that he expected to prove by Roy Fite he elicited from the witness Norris Stephens. ■ Third, the rule is well settled that the opening statement of the prosecuting attorney is not error if he acts in good faith and with reasonable grounds for supposing that he can prove the facts stated. The trial court has a wide discretion in determining whether the prosecuting attorney is acting in good faith. [16 C. J. 890; Dees v. Skrainka Construction Co., 320 Mo. 839, 8 S. W. (2d) 873; State v. Beaghler (Mo.), 18 S. W. (2d) 423.] We cannot find in the instant case that the court abused its discretion. This assignment therefore is ruled against appellant.

■ III. A third assignment of error, closely related to the preceding one, is based upon the refusal of the court to give the jury appellant's Instruction A which is as follows: "The court instructs the jury that you will not consider as evidence in this case any statement made by the prosecuting attorney in his opening statement to you. In this connection the court instructs that there is no evidence in this case as to any statements made by either the defendants Lindsey or Brown to one Roy Fite and you (should) wholly disregard statements made by the prosecuting attorney relating to such statements."

The trial court well might have given Instruction A. But the instruction was not upon an essential question as to which the court should have informed the jury, whether requested or not, under its mandatory duty to properly advise the jury of the issues in the case. [State v. Starr, 244 Mo. 161, 148 S. W. 862; Sec. 3681, Ann. Stat. 1929.] It was upon a collateral question as to which the court, when properly requested, should instruct. [State v. Starr, supra.] But we cannot say that the refusal of the court to give Instruction A was error affecting the substantial rights of appellant and therefore reversible. It was cautionary and as such in a class of instructions which the trial court may give or refuse in the exercise of a broad discretion. The court gave ten instructions at the request of the State and four at the instance of appellant. Instruction 1 among other things advised the jury that "it is the duty of the court to instruct you on all questions of law arising in this case, and your duty to re-

ceive such instructions as the law of the case, and to find the defendant guilty or not guilty according to the law as declared by the court and the evidence as you have received it under the direction of the court." Other instructions are predicated upon "all the facts and circumstances proved," and "if you find and believe from the evidence beyond a reasonable doubt," and the like. Reasonable doubt was defined in an instruction given on behalf of the State and amplified in one given at the request of the appellant. The jury also was warned that "whatever counsel may say you will bear in mind that it is your duty to be governed in your deliberations by the evidence as you understand it and remember it to be and by the law as given by the court in these instructions." In these circumstances the refusal of the court to give appellant's Instruction A was not reversible error.

IV. A statement of facts is now in order. The Boone County jail at Columbia at the times mentioned in evidence consisted of two structures, one of brick, the other of rock, adjoining each other and connected by a door. The brick building contained a cage, surrounded on four sides by a passageway about five or six feet wide. There was also a clearance of four or five feet between the top of the cage and the ceiling. The rock building contained four cells, two on a level with the floor of the brick building and two above. On the night of Sunday, November 29-30, 1931, there were a dozen prisoners in the jail. Of these, Brown and appellant Lindsey were locked in one of the upper cells of the rock building. Another prisoner was in one of the lower cells. The remaining inmates of the jail were in the brick building. They had the liberty of the passage way and slept upon cots, arranged along the walls. Appellant Lindsey was a prisoner for nearly three weeks before the assault upon Cook and the escape. For the first five days he had the privileges of the brick building. During that spell of partial freedom, Lindsey inquired of other prisoners what was the easiest way to get out and whether they would help him pry a bar. He climbed atop the cage in the brick building, and inspected a hole in the ceiling. Soon after, he was locked in the cell in the rock building with Brown as his companion. Their meals were carried to them and they were not allowed to leave the cell.

Norris Stephens was put in jail on the afternoon of Saturday, November 28, and soon Brown and Lindsey called him to the door of their cell. Brown said that he and Lindsey were going to escape that night. His words were: "We aim to get out of here and we may have to kill two or three." He also said that Cook (for whose subsequent death appellant was indicted, tried and convicted) was a snitch, that he was the one who had had Lindsey put in the rock cell.

Lindsey also stated that Cook was a snitch. Brown added that if Cook "raised up," he would knock his brains out. During this conversation, Brown stood at the door of the cell and Lindsey was on the bunk within hearing distance. In a later conversation Brown informed Stephens that they had saws to cut their way out. On Saturday evening, November 28, Brown and Stephens, working together, the one within, the other outside the cell, and each holding an end of a saw, sawed nearly through the staple of the lock of the steel door of the cell in which Brown and Lindsey were prisoners. They completed this job Sunday night about ten o'clock. Stephens then retired to sleep on top of the cage in the brick building. He was awakened in the early hours of Monday, November 30, by appellant Lindsey, who together with Brown was then at large in the passage way of the brick building. Lindsey had a stick of wood in his hand and Brown an iron stove shaker, which Stephens had seen in the rock cell while he and Brown were sawing the staple. About the time that he saw appellant and Brown in the brick building, Stephens also saw Cook stagger along the passage way and fall upon a cot.

Other prisoners in the brick building told of the beating of Cook in the early morning of November 30. Dave Sims awoke to hear the sounds of blows, frequent and many, coming from the corner of the passage way where Cook had his cot. Cook was exclaiming "what was the matter" and "what they meant." There was no answer but blows. Soon after, Cook staggered around a corner of the cage, his head bloody, and fell upon a cot. Arthur Vanes, a prisoner, awoke and saw two men scuffling with Cook beside the latter's cot. Cook sprang at one of them. It was dark and Vanes could not note details, but he saw the scuffling and heard the blows, and observed Cook fall upon a cot. After Cook had been beaten, Brown took post at the door to the sheriff's house, armed with the stove shaker. Appellant Lindsey stood upon a barrel and sawed an iron bar in one of the windows in the brick jail. Through the opening made, first Lindsey and then Brown escaped. Norris Stephens attempted to get out, but he was pulled back by other prisoners who also notified the sheriff. The sheriff arrived immediately after the escape and Cook said to him that Brown and Lindsey had knocked him on the head. The stove shaker which Brown had in his hands before he escaped was found on top of the barrel on which Lindsey had stood to saw the bar. A stick of wood was found, some prisoners testified, beside the barrel, but, Sheriff Ballew stated, in the window through which the escape was made. This stick was described as sixteen inches long, and triangular shaped with each face two or three inches wide. A doctor treated Cook as for superficial scalp wounds, but he was found dead on his cot a few hours later. The post mortem examination of the body of Cook revealed four wounds

upon his head, a bruise at the base of his skull and other bruises about the ribs and upon the legs, ankles, arms and hands. One of the wounds upon the head was shaped like the letter Y. Beneath it was a fracture of the skull. The surgeon who conducted the examination testified that this wound could have been produced by the stick of wood mentioned in evidence. The second wound upon the head was star shaped. It also had caused a fracture of the skull. The post mortem surgeon gave it as his opinion that this wound could have been caused by the iron stove shaker. The skull fractures were so violent that they crushed in the brain and produced hemorrhages which resulted in death. The evidence warrants the inference that the triangular shaped stick of wood was in the hands of the appellant Lindsey and the iron stove shaker in the hands of Brown during the scuffling with Cook before these two men escaped from the jail, and that blows from these weapons produced the skull fractures. Further facts will be stated, if necessary, in the examination of assignments of error.

V. Appellant assigns as error the giving on behalf of the State of Instruction 2, which is as follows: "The court instructs the jury that when two or more persons enter upon an unlawful undertaking with a common purpose to aid and assist each other in whatever may grow out of the undertaking, each is responsible for everything which may proximately result from such unlawful purpose, whether contemplated at the time the arrangement was made or not, and whether actually performed by all or any one of the participants or any one of the said persons."

Appellant's criticism of this instruction is thus stated in his motion for a new trial. "The State attempted and undertook to prove two distinct conspiracies: One a conspiracy to kill Cook, and another to escape from the jail. This instruction authorized the jury to convict the defendant even though the jury might not have believed that there was a conspiracy to kill Cook, but only a conspiracy to escape from the jail. If there was only a conspiracy to escape from the jail Lindsey was only responsible for such acts of Brown in making such escape as might have been reasonably anticipated or foreseen, not for each and every act of Brown, as the jury were instructed." In his assignments of error he states the further objection that the instruction assumes a conspiracy had been proved.

Of this instruction we may observe that it states an abstract proposition of law. This court has said of a somewhat similar conspiracy instruction: "It has been held no error to refuse instructions which state abstract propositions of law, but it is also usually not error to give them. . . . *The instruction does not authorize a verdict.* It simply attempts to place before the jury the law and the condi-

tions under which an accessory before the fact might be found guilty. There is no reason to think the jury would understand that the defendant could be found guilty unless he actually did participate in the conspiracy and intended to have the crime committed." [State v. Gentry, 329 Mo. 282, l. c. 288, 44 S. W. (2d) 27.] In the foregoing case the defendant was convicted of burglary and larceny and his sentence was affirmed, although he was not present at the time and place of the commission of the crime. Of the instruction under examination we may say that for the reason that it states an abstract proposition, it does not assume that a conspiracy has been proved. We may also conclude, in the language of the Gentry case, that there is no reason to think that the jury would understand from Instruction 2 that appellant Lindsey could be found guilty unless he actually did participate in the assault upon Cook. Other Instructions would not permit the jurors so to misunderstand Instructions 2, and all instructions are to be read together. Appellant in support of his contention that Instruction 2 assumes the fact of a conspiracy, cites cases each of which directs the jury to return a verdict of guilty upon a finding of facts hypothesized. The error in each of these cases is that one or more specific facts, necessary to be found by the jury, are not hypothesized but are assumed. [State v. Johnson (Mo.), 234 S. W. 794; State v. Potts, 239 Mo. 403, 144 S. W. 495; State v. Farr (Mo. App.), 255 S. W. 1069.] It is quite obvious that these authorities are not in point, since Instruction 2 is general and does not direct a verdict.

VI. For the better understanding of Instruction 2, it is well to examine at this point the question whether the trial court was warranted by the law and the evidence to submit to the jury the issue of appellant's guilt of murder in the first degree. Appellant contends that the jury should have been directed to decide only the issue of murder in the second degree. At common law there were no degrees of murder. If a person committed a homicide in the perpetration of an offense, he was guilty of murder in case the offense was a felony and of manslaughter if the offense was a misdemeanor. [Wharton on Homicide (3 Ed.) pp. 147, 174, 178, et seq.; State v. Robinett, 279 S. W. 696.] These rules of the common law have been modified by our statutes defining degrees of murder. Section 3982, Missouri Statutes Annotated 1929, provides that "every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree." Section 3983, Missouri Statutes Annotated 1929, defines murder in the second

degree in these terms: "All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree."

It is a felony for a prisoner to break jail after conviction for a criminal offense (Sec. 3915, Mo. Stat. Ann. 1929) or before conviction for violation of any penal statute (Sec. 3916, Mo. Stat. Ann. 1929). It does not appear from the record whether appellant Lindsey or Brown at the time of their escape from the Boone County jail, were prisoners before conviction or after conviction. In either case the offense was a felony but not one of the felonies mentioned in the statute defining murder in the first degree (Sec. 3982) If therefore the degree of murder for which appellant was liable for trial should have been determined by the fact that he was engaged or was about to engage, at the time of the assault upon Cook, in the commission of the felony of jail breaking, then under Section 3983, the jury should have been instructed only on murder in the second degree. But if there be present in this or any like case, facts and circumstances apart from those of the other crime, tending to prove that a murder was committed "by means of poison or by lying in wait, or by any other kind of willful, deliberate and premeditated killing," which is the primary definition of murder in the first degree given in the statute (Sec. 3982), then the issue of murder in the first degree should be submitted to the jury, regardless of the issue whether the accused at the time was also engaged in the perpetration of any of the felonies mentioned in Section 3982, or of any of the other felonies contemplated by Section 3983, or even of a misdemeanor.

If support be necessary for the foregoing statement, we find it in the text-writers and the cases giving the reasons for imputing murder in the first or second degree to homicides committed in the perpetration of a felony. Wharton on Homicide (3 Ed.), page 174, in explaining the common-law rule that where a person is killed by some one in the perpetration of a felony the criminal act is murder, states: "In such case the turpitude of the criminal act supplies the place of deliberate and premeditated malice and is its legal equivalent." And in 29 Corpus Juris, page 1097, we find the rule thus stated: "An unintentional homicide, committed by one who at the time is engaged in the commission of some other felony, is murder both at common law and under the statutes, even though the statute requires a premeditated design to effect death as the requisite of murder." This court, in State v. Robinett, 279 S. W. 696, l. c. 700, summarizes the rule in Missouri in these words:

"Where two or more persons agree together to commit some felony not mentioned in Section 3230 (Sec. 3982, R. S. 1929), enter upon its commission, and, for the purpose of carrying it out, kill some person, although such homicide was not in contemplation when

they decided to commit the crime, it is murder in the second degree, *if the killing was not intentional, but incidental.*

"From the authorities quoted we get these distinctions: Where parties are engaged in the commission of one of the felonies enumerated in Section 3230 (Sec. 3982, R. S. 1929), if a homicide accompanies and is incidental to the enterprise, whether intended or not, it is murder in the first degree; if the intention is to commit some felony other than one of those enumerated in that section, such homicide, *although unintentional,* is murder in the second degree under Sec. 3231 (Sec. 3983, R. S. 1929), and if the unlawful act, which they are in the act of perpetrating, is a misdemeanor, *and the homicide is incidental and not intentional,* the offense would be manslaughter." (Our italics.)

From the foregoing we see that the necessary elements of murder in the first or second degree are imported or transferred into the homicide case from the felony perpetrated only when those elements are not independently present in the record of the homicide. But if those elements are independently present, then, when the other felony committed is other than arson, rape, robbery, burglary or mayhem, the rule is as stated by this court in State v. Hayes, 262 S. W. 1034, l. c. 1037: "But if the common purpose is to commit some felony other than one of those enumerated in Section 3230 (Sec. 3982, R. S. 1929), the crime is murder in the first or second degree, depending upon circumstances attending the homicide."

A case much in point here and which aptly illustrates the proposition that the crime is murder in the first or second degree depending upon circumstances attending a homicide committed in the perpetration of a felony other than those mentioned in Section 3982, Revised Statutes 1929, is State v. Vaughan et al., 200 Mo. 1, 98 S. W. 2; same case, 203 Mo. 663, 102 S. W. 644. In that case the three defendants and another, convicts in the Missouri penitentiary, killed two guards in the perpetration of the felony of escaping from prison. Although it did not appear which, if any, of the three defendants fired the shot which caused the death for which they were put on trial, yet this court held, upon each appeal, that under the facts and circumstances, the issue of murder in the first degree was for the jury. In fact this court in each appeal approved the action of the trial court in refusing to give instructions on murder in the second degree. And upon the second appeal, the sentences of death imposed upon these defendants were affirmed.

Under the facts in evidence in the instant case and heretofore summarized we are of opinion that the court properly submitted to the jury the issue of appellant's guilt of murder in the first degree, regardless of the nature of the other offense which appellant consummated after the assault upon Cook. Appellant himself, we are

warranted to infer, struck with a triangular shaped piece of wood, at least one of the death dealing blows upon Cook's head. Appellant and Brown were free to leave their cell from the moment on Sunday night between ten and eleven o'clock when the staple on the imprisoning door had been severed. But they saw fit to remain in their cell until about two o'clock Monday morning when they descended into the brick building where the other prisoners were asleep. We may infer from the evidence that their first act was to belay Cook with their iron shaker and wooden stick. Cook's exclamations also justify the conclusion that he was asleep when his assailants fell upon him. There also was evidence tending to prove that appellant as well as Brown bore a grudge against Cook at least for several days prior to November 30, for the stated reason that Cook had brought about the imprisonment of appellant in the locked cell.

The State's given instructions make no reference whatever to the evidence of the escape and, therefore, do not predicate a verdict of guilty of murder in either degree upon the common design to perpetrate the felony of breaking jail. In this respect the instructions in the instant case differ from instructions in other murder cases in which the absence of evidence of wilfulness, deliberation, premeditation or malice on the part of the accused in the homicide obliged the State to invoke by instructions the aid of Sections 3982 or 3983 to establish the necessary elements of the degree of murder charged. [State v. Williams, 309 Mo. 155, 274 S. W. 427; State v. Hershon, 329 Mo. 469, 45 S. W. (2d) 60; State v. Nasello, 325 Mo. 442, 30 S. W. (2d) 132; State v. Messino, 325 Mo. 743, 30 S. W. (2d) 750.] In the instant case the trial court instructed upon murder in the first and second degree. Instruction No. 2 was not inconsistent with these instructions. For the reasons stated, assignments of error predicated upon Instruction 2 and upon the submission of the issue of murder in the first degree are ruled against appellant. ██ For the like reasons, we overrule assignments of error based on the court's refusal to give appellant's Instructions B, C, F and G, which are upon the theory that appellant did not strike any blows; that the assault upon Cook was made by Brown, and that appellant was not liable for the consequences of the assault unless the killing of Cook by Brown reasonably could have been anticipated and foreseen as a probable incident to the attempt to escape from jail.

VIII. We have examined appellant's other assignments of error. If, in fact they may be erroneous, they are not prejudicial. Therefore we affirm the judgment. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by Fitzsimmons, C., is adopted as the opinion of the court. All the judges concur.