**STATE of Missouri, Plaintiff-Respondent,**

v.

**Raymond Charles MILENTZ, Defendant-Appellant.**

**No. 37188.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Jan. 11, 1977.

Motion for Rehearing or Transfer
Denied Feb. 16, 1977.

Application to Transfer Denied
April 11, 1977.

Bell, Harris, Kirksey, & Harris, James A. Bell, St. Louis, for defendant-appellant.

William F. Arnet, Preston Dean, Asst. Attys. Gen., Jefferson City; Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

A jury returned verdicts convicting the defendant of two counts of murder in the

second degree and one count of escaping custody after conviction. Pursuant to the Second Offender Act,[1] the trial court sentenced defendant consecutively to 30 years imprisonment on the first murder count, 25 years imprisonment for the second murder count, and 5 years imprisonment for the escape count. Defendant has appealed raising a multitude of points for our consideration, none of which serves as a basis for reversal.

While serving a five year prison sentence, defendant participated in a drug education program known as Operation Depart. The program was directed by the penitentiary's special activities coordinator, Barnard Forck, and Forck was authorized to remove inmates from the penitentiary so that they might participate in the program on the outside.

On November 21, 1974, Forck took the defendant and inmates Rulo and Blake to St. Louis where they were to attend and participate in a series of meetings. While waiting for a meeting to commence in the St. Louis City Hall, defendant, who was on the honor system, asked Forck for permission to respond to a call of nature. Permission was granted—an unfortunate contretemps for Forck—and the defendant was told to meet Forck on the third floor of the City Hall for a meeting. Inmate Blake also received permission to leave for a similar purpose and was likewise instructed to return to the third floor. Defendant thereupon departed and failed to return for further participation in Operation Depart. Forck's discomfiture was complete when Blake followed the defendant's example. A search for the defendant and Blake was unavailing, and a report of the escape was made to police.

Defendant spent the night of his escape and the next day, November 22, with friends, and on the evening of November 22 made use of a 1968 Pontiac owned by a friend, Jackie Porter, to visit his sister-in-law who lived on Risch Avenue in south St. Louis County. St. Louis County police had been alerted to the possibility that the de-fendant might visit his sister-in-law and at approximately 1:25 a.m. on November 23, two county police officers in an unmarked police car observed the defendant in the Pontiac driving slowly on Risch Avenue. The police car followed defendant for a short distance to an intersection stop light. The defendant stopped briefly with the police car behind him, and when the police activated their grille lights, the defendant hastily moved away. A high speed chase ensued with the police car's red grille lights flashing and siren wailing. During the chase, in which the police maintained one-half block distance from the defendant, both vehicles reached speeds of 95 m.p.h. The speeding defendant violated a stop sign at a street intersection in St. Louis and hurtled into the intersection, plunging into an automobile occupied by John and Janet Prag. Both Prags were killed by the collision, and the defendant was assisted by the police from his auto before it burst into flames.

Defendant was charged in six counts. Counts I and II charged defendant with the murders of Janet and John Prag, by feloniously driving a motor vehicle into them, and doing so "in order to further his escape from the lawful custody of the Missouri Department of Corrections, and its officers, and to elude arrest and capture by duly authorized peace officers of the State of Missouri who were then and there engaged in their lawful duty of seeking to arrest and recapture him for said escape . . . ." resulting in the deaths of Janet and John Prag. Counts II and IV, on the other hand, charged defendant with causing the deaths of Janet and John Prag by feloniously driving a motor vehicle into them while "operating a 1968 Pontiac motor vehicle owned by Jackie Porter without the permission of said Jackie Porter; and that in causing the deaths of [the Prags] and operating said motor vehicle he sought to avoid arrest, and elude capture by duly authorized peace officers of the State of Missouri for operating a motor vehicle without the consent of the

---

1. Section 556.280 RSMo 1969.

owner. . . ." Count V charged defendant with the offense of escaping custody after conviction; Count VI charged the offense of operating Porter's Pontiac without his permission. It is clear that the State was proceeding with alternative felony-murder theories—one theory being that the homicides occurred during the perpetration of the felony of escaping after conviction, and the second theory being that the homicides occurred during the perpetration of the felony of operating a motor vehicle without the owner's consent.

■ As his first assignment of error, defendant argues that the trial court erred by failing to compel the State to elect which of the four murder counts it would proceed upon at trial. Defendant filed a pre-trial motion to compel such an election, and arguments on the motion were presented at a pre-trial conference. The State contended that all counts were properly joined pursuant to Rule 24.04 and that MAI–CR 2.70 [2] allowed alternative counts to be submitted to the jury. The motion to compel election was overruled. Defendant now argues that the State "indicted the defendant for the felonious murder of two persons twice," and that "the trial court committed reversible error in the instant case when it punished defendant on multiple charges of murder for the same two deaths." Such argument is too fenestrated to hold much merit.

■ The State charged the same two offenses in Counts I and III as were charged in Counts II and IV, the alternative counts merely setting forth the commission of the two offenses in different manner. When Jackie Porter was called as a witness for the State he unexpectedly elected to exercise his Fifth Amendment privilege and refused to testify. Consequently, the State

was unable to prove one of its alternative theories of felony-murder—homicide emanating from the operation of a vehicle without the owner's consent. Counts II and IV, along with Count VI, were therefore dismissed at the close of all the evidence and were never submitted to the jury. It has long been the rule in Missouri that the State may charge a defendant with an offense in alternative counts for the purpose of meeting the evidence that may be adduced at trial.[3] This was done in this case, and no error resulted from overruling the motion to compel election before trial.

■ Defendant's second and third points formulate his contention that the State failed to establish a submissible case of murder in the second degree and that the court erred in instructing on felony-murder in the second degree. Essentially, he argues that the instruction was error, as he had no intention of harming John or Janet Prag; that the underlying felony of escape was completed on November 21 (the date he left City Hall) and could not be utilized as the basis of a felony-murder submission. We reject both of these points and hold that the court properly instructed the jury on murder in the second degree under the felony-murder rule.

If a homicide is committed in the course of perpetrating a felony which is not enumerated in § 559.007, RSMo Supp. 1975 (formerly § 559.010, RSMo 1969), that homicide may become murder in the second degree under § 559.020, RSMo 1969, pursuant to the felony-murder rule. *State v. Mudgett,* 531 S.W.2d 275, 278–279 (Mo. banc 1975); *State v. Jasper,* 486 S.W.2d 268, 271 (Mo. banc 1972); *State v. Lindsey,* 333 Mo. 139, 62 S.W.2d 420, 425 (1933); *State v.*

---

2. See also MAI–CR 2.71.

3. *State v. Gray,* 37 Mo. 463 (1866); *State v. Houx,* 109 Mo. 654, 19 S.W. 35 (1892); *State v. Hargraves,* 188 Mo. 337, 87 S.W. 491 (1905); *State v. Carragin,* 210 Mo. 351, 109 S.W. 553 (1908); *State v. Link,* 315 Mo. 192, 286 S.W. 12 (1926); *State v. Brown,* 317 Mo. 361, 296 S.W. 125 (1927); *State v. Gant,* 33 S.W.2d 970 (Mo. 1930); *State v. Shelby,* 333 Mo. 1036, 64 S.W.2d 269 (banc 1933); *State v. Koelzer,* 348

Mo. 468, 154 S.W.2d 84 (1941); *State v. King,* 303 S.W.2d 930 (Mo.1957) ["It is a rule of practice, well established in both civil and criminal cases, that, where the same transaction is stated in different counts, no election can be required before the introduction of the evidence." *Id.,* at 936(9)]; *State v. Green,* 511 S.W.2d 867, 874(13) (Mo.1974); *State v. Mullen,* 532 S.W.2d 794, 797(4) (Mo.App.1975); MAI–CR 2.70, 2.71.

*Robinett,* 279 S.W. 696, 700 (Mo.1926). In the instant case the jury returned a verdict finding defendant guilty of the felony of escaping custody after conviction,[4] which was the underlying felony supporting the felony-murder submission. The finding of guilt for that felony served to supply the felonious intent necessary to the murder conviction. *State v. Chambers,* 524 S.W.2d 826, 829 (Mo. banc 1975). The applicable rationale "is that in cases of felony-murder in the second degree, the defendant has formed a criminal intent to commit the underlying felony; and if he proceeds with its perpetration, he should answer to the consequences of his intentions, including accountability for homicides that occur incidental to the underlying felony." *Id.,* at 833.

Thus, it is the law that "when the homicide is within the res gestae of the initial crime and is an emanation therefrom, it is committed in the perpetration of that crime . . . ." *State v. Mullen,* 532 S.W.2d 794, 797 (Mo.App.1975)[5] [citing *State v. Adams,* 339 Mo. 926, 98 S.W.2d 632, 637 (1936), and *State v. Messino,* 325 Mo. 743, 30 S.W.2d 750 (1930)]. It has been held that the felony-murder doctrine applies where the initial crime and the homicide are parts of one continuous transaction and are closely connected in point of time, place and causal relation, as where the killing is done in flight from the scene of the crime to prevent detection or to promote escape. *State v. Adams,* supra; (citing cases); *State v. Beal,* 470 S.W.2d 509 (Mo. banc 1971). The facts and circumstances of the instant case warrant the inference that even if defendant believed that his original escape had been consummated, he renewed his purpose to perfect escape from lawful custody by fleeing from the police as he did. *State v. Hershon,* 329 Mo. 469, 45 S.W.2d 60 (1931). We believe that it was a jury matter whether the defendant's actions in fleeing the police was a part of his effort to perfect his escape from City Hall. The jury could

have found that the lapse of time and the travel patterns of the defendant subsequent to his escape from custody at City Hall did not terminate the criminal activity in perpetration of the escape in light of his renewal of purpose to perfect escape. *State v. Engberg,* 376 S.W.2d 150 (Mo.1964). Once the requisite causal connection between the underlying felony of escape after conviction and the two homicides was established, it was proper for the court to instruct on second degree murder under the felony-murder doctrine, and the jurors were justified in returning the verdicts they did.

The holdings of *State v. Chambers,* supra; *State v. Jasper,* supra; and *State v. Beal,* supra, are particularly felicitous to this case. In *State v. Chambers,* supra, the defendant and a companion stole a pickup truck and while escaping from the owner and during the asportation of the vehicle collided with an automobile, killing four occupants. The defendant's convictions of four counts of second degree murder were affirmed. The court found that the theft of the pickup truck—a felony—supplied the requisite felonious intent to support the convictions for second degree murder under the felony-murder rule.

In *State v. Jasper,* supra, the defendant, while fleeing police in a high speed auto chase after a robbery, collided with another auto, killing three occupants. The defendant was convicted of second degree murder. The court found that defendant's flight from the robbery could constitute a continuation of the robbery and serve as a basis for a first degree felony-murder charge. Additionally, it was found that the defendant's flight from the police could serve as basis for a jury submission of second degree murder on a jury finding that the homicide occurred in connection with a resisting arrest offense. While *Jasper* was reversed and remanded for instructing the jury only on the basis of a conventional second degree murder and not under the common law

---

**4.** Section 557.351, RSMo Supp.1975.

**5.** Many causation cases we have found are felony-murder first degree cases, relying some-

what on § 559.010's "perpetration" language; yet the causation rationale applies equally to felony-murder in the second degree.

felony-murder rule for resisting arrest, the court emphasized that the evidence would have justified the felony-murder submission.

In *State v. Beal,* supra, the companion case to *Jasper* (Beal was Jasper's co-perpetrator of the robbery), the court held the felony-murder doctrine would apply where occupants of an auto were killed in a collision with an auto driven by fleeing robbers in the course of a robbery.[6]

Inasmuch as the jury was properly instructed on second degree murder with escape as the underlying felony, *State v. Chambers,* supra; and *State v. Jasper,* supra, clearly support the defendant's second degree murder conviction here.

■ Defendant next contends that the court erred in not instructing the jury on excusable homicide even though he requested no such instruction. Defendant testified that Forck told him he could leave City Hall the afternoon of November 21 if he would return for an 8:00 p. m. meeting at a methadone clinic. Defendant stated that he then left City Hall with Forck's permission but did not meet him at the clinic. Defendant admitted being involved in the chase during the early morning of November 23, but his explanation for the hegiria was his belief that the car following him bore strangers who were "after" him and causing him the dithers. He testified that he saw someone on the passenger side of the car pull a pistol into the air; he heard shots; he then "took off" and "didn't slow down no more, to see if they was going to come up behind me." He denied hearing sirens and did not recognize his pursuers as police officers. He could not recall the accident. On cross-examination, defendant did admit that he knew he was to return to the penitentiary and that it was Forck's responsibility to return him there at the end of the day's activities. He also acknowledged his prior conviction.

Defendant's testimony, which was the entire evidence produced on his behalf, fails to bring his actions within the ambit of excusable homicide, as his testimony does not contradict the State's evidence that he was racing through metropolitan streets at 95 m. p. h. to the time of the collision. Section 559.050(1) RSMo 1969 provides that homicide shall be deemed excusable when committed by accident or misfortune in doing any lawful act by lawful means, *"with usual and ordinary caution,* and without unlawful intent." (emphasis supplied) We hold that as a matter of law, the defendant was not exercising usual and ordinary caution at the time of the catastrophic collision. The court did not err by failing to instruct the jury on the defense of excusable homicide.

Further, it could be found that defendant's driving at the grossly excessive speed of 95 m. p. h. in a metropolitan area was in itself an unlawful act. § 304.010, RSMo Supp.1975. Inasmuch as a homicide was perpetrated in the commission of an unlawful act, it would be proper to deny defendant an excusable homicide instruction. *State v. Williams,* 545 S.W.2d 342 (Mo.App. St.L.Dist.1976); *State v. Merritt,* 540 S.W.2d 183 (Mo.App.1976); *State v. Smith,* 539 S.W.2d 571 (Mo.App.1976).

Defendant's next contention is that the trial court erred in failing to declare a mistrial when the prosecutor mentioned defendant's participation in a drug program. During his opening statement the prosecutor stated that the defendant and others "went to the City Hall to visit with the mayor concerning a contribution the mayor had made to this project that they had up there called Operation Depart, which is an organization to help rehabilitate people who have had either prior conviction problems or drug problems—that sort of thing—in the penitentiary." Forck, during the direct examination, also made reference to the fact that the defendant was participating in a "drug program." Defendant's counsel ob-

---

6. *Beal* was a first degree murder conviction, and the jury was properly instructed on a first degree felony-murder occurring during the perpetration of a robbery, whereas *Jasper* in-

volved a second degree murder conviction which could have been based on resisting arrest.

jected to the drug program reference on the basis that the comments were designed to infer that the defendant was an addict. In overruling the objections, the trial court advised defendant's counsel that he would be allowed broad latitude in cross-examination to efface any harmful effect of such inference. Defendant's counsel took full advantage of the opportunity and elicited favorable testimony from Forck that the defendant was "a model prisoner"; that defendant was not an addict; and that the program was a valuable tool in drug use prevention.

In his motion for new trial, defendant assigned as error that permitting the reference to the drug program to stand left the inference that defendant was a drug addict. On appeal, defendant assigned as error: "the court erred in not declaring a mistrial when: evidence was admitted that the defendant was participating in a drug program." This point is not preserved for our review: first, it is a palpable violation of Rule 84.04(d); second, defendant's argument portion of his brief stresses that reference to the drug program was a reference to guilt of other crimes—a variance from the alleged assignment of error in the motion for new trial. See *Kinder v. Pursley*, 488 S.W.2d 937 (Mo.App.1972). We decline to review this contention under the plain error doctrine of Rule 27.20(c), as the reference did not amount to suggestion of other crimes. Further, there was no manifest injustice or miscarriage of justice by the admission of the comments even if it did constitute error, for clearly, Forck's testimony completely erased any possible inference that the defendant was a drug addict.

Defendant also argues that the trial court erred in admitting testimony regarding the escape of his companion, Blake. During his direct examination, Forck related that Blake had escaped with the defendant using a similar nature call ruse. Both acts of escape were closely connected including the means of search for both men after the escape. The acts and conduct of Blake were admissible as part of the res

gestae of defendant's escape. *State v. Talbert*, 454 S.W.2d 1 (Mo.1970).

Defendant has failed to preserve his next contention that the trial court erred in not declaring a mistrial "when the circuit attorney stated in closing argument that the defendant's lawyer had been furnished police reports and other documents and well knew what the evidence would show. The allowance of such a comment by the prosecutor constituted prejudicial error." This assignment fails to state briefly and concisely where and how the action or ruling of the court is claimed to be erroneous and is not preserved for review. Rule 84.04(d). We also observe that the prosecutor was merely replying to defendant's counsel's argument that the State had failed to produce certain witnesses and was a proper retaliatory comment. *State v. Ellifrits*, 459 S.W.2d 293 (Mo. banc 1970).

Defendant's final point relates to a jury inquiry sent to the trial judge. After the jury had been instructed and had retired for its deliberations, the following inquiry was sent to the court by the jury foreman:

"Interpretation or Clarification Needed:

1. Can a verdict of guilty of Escaping After Conviction make it only possible to have a verdict of guilty, Murder Second Degree, or

2. Is it possible, also, to have a guilty verdict on Manslaughter and not guilty on Murder Second Degree?"

The court summoned counsel and informed them of the inquiry, whereupon defendant's counsel requested the court to refer the jury to Instruction 10, which instructed the jury to consider each count separately and render separate verdicts as to each count. The court declined this suggestion and returned the jury's inquiry with a notation that "the jury will be bound in its deliberations by the instructions previously given to it by the Court." Defendant now contends that "since the jury asked for clarification as to the culpability of the defendant for lesser offenses, the court committed reversible error in refusing to instruct the jury

under an equally plausible theory of guilt or innocence."

We have difficulty in grasping the intent of defendant's nubilous complaint; the argument in the brief is also recondite. But we believe it is sufficient to state that the trial court's response in this instance in referring the jury to the instructions given, without more, was proper. See *State v. Taylor,* 408 S.W.2d 8 (Mo.1966); *State v. Lawson,* 501 S.W.2d 176 (Mo.App.1973).

The judgment is affirmed.

KELLY, P. J., and SIMEONE, J., concur.