

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,               )
                                 )
    Plaintiff-Respondent,        )
                                 )
vs.                              )        No. SD35804
                                 )
MARTIN DEAN PRIEST,              )        **Filed:  October 8, 2019**
                                 )
    Defendant-Appellant.         )

APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable Kenneth M. Hayden, Circuit Judge

**<u>AFFIRMED</u>**

Martin Dean Priest ("Appellant") was convicted of murder in the first degree[1] for the murder of fifteen-year-old T.R. ("Victim") that occurred over thirty years ago. Appellant brings two points on appeal:  first, Appellant claims the trial court erred in not granting a judgment of acquittal because insufficient evidence was presented from which a reasonable juror could have concluded beyond a reasonable doubt that Victim's murder was committed "in the perpetration of" her rape; second, that the trial court erred in refusing to grant a mistrial when a State's witness made the comment "[e]verybody

---

[1] The crime of murder in the first degree under the criminal code in place at the time of the alleged crime (section 565.003, RSMo 1978) was similar to what would be the crime of second degree "felony" murder, section 565.021(2), RSMo Cum.Supp. 2017, today.

knows [Appellant] anyways in the Kansas Department of Corrections." We find no error and affirm the conviction.

Over thirty years after the disappearance of Victim, the nephew of Appellant and a witness to Victim's rape and murder ("Witness"), came forward and implicated Appellant. The evidence at trial indicated that Appellant suggested to Witness that they ask Victim if she wanted to skip school and come with them. Victim got into the car with Witness and Appellant. Despite Victim's repeated requests to go back to school, Appellant drove to a remote area. Victim said she had to go to the restroom and fled. Appellant told Witness to go get Victim. Witness calmed Victim down and convinced Victim to return to the car. Appellant suggested Witness and Victim have sex while Appellant watched.[2] Afterwards, Appellant told Victim to get back in the front seat next to him. When she did, Appellant hit Victim over the head with a wrench, raped her and strangled her.[3]

Other evidence included Appellant asking his ex-girlfriend to lie to police and to say that she had seen Victim later than the date she was reported missing. Appellant also told Victim's mother (who was also his girlfriend) that he had hidden Victim and that she must stay with him if she ever wanted to see her daughter again. A schoolmate also testified that he had seen Victim enter a car that day and that she was not seen afterwards. The school friend was able to identify Witness's picture from a photo line-up which brought the police to Witness. Ultimately, after the death of his mother when he knew

---

[2] Witness had been sexually abused by family members by being made to have sex in front of them and felt he needed to do what Appellant asked.

[3] Appellant also struck Witness when he tried to intervene. Witness was also threatened that if he told anyone, Witness would be "in just as much trouble as [Appellant]" or "that what happened to [Victim] could happen to him." Witness was 13 years old at the time and was told that he was to blame because he encouraged Victim to come with them and "if [Witness and Victim] didn't [have sex] in the back seat, [the murder] wouldn't have happened."

2

that his mother and brother could not be implicated, Witness assisted the police with the investigation.

Appellant was charged with first-degree murder under the theory that he "caused the death of [Victim] by strangling her, and that [Appellant] did so in raping [Victim] or to prevent detection after raping [Victim.]" Appellant challenges the sufficiency of the evidence under the theory that the only witness to the murder testified that Victim was strangled and killed after the rape and not "in the perpetration" of the rape. Appellant argues that under "felony" murder killing, "a defendant may be responsible for any deaths that are the natural and proximate result of the crime." Appellant argues that the rape and strangulation are two separate crimes and that the strangulation was not the natural and proximate result of the rape.

"[W]hen the homicide is within the res gestae of the initial crime and is an emanation therefrom, it is committed in the perpetration of that crime [in the statutory sense]." *State v. Milentz*, 547 S.W.2d 164, 168 (Mo.App. St.L.D. 1977) (internal quotations and citations omitted). Felony murder applies where the crime and murder are parts of one continuous transaction and are closely connected in point of time, place and causal relationship. *Id.* Missouri courts determine if the underlying felony "'set into motion the chain of events'" that caused the death. *State v. Burrage*, 465 S.W.3d 77, 80 (Mo.App. E.D. 2015) (quoting *State v. Moore*, 580 S.W.2d 747, 752 (Mo. banc 1979)).

The testimony at trial was that the entire series of events happened quickly. To expect Witness to parse out when the rape ended and the suffocation began is an untenable task under the facts of this crime. The rape and murder were so closely connected by time and space as to be considered one continuous transaction. The actions

of Appellant, including the strangling, were within the res gestae of the initial crime of the rape. Appellant's later statements and actions in hiding the body provide a reasonable inference that he murdered to cover up the rape. Appellant's first point is denied.[4]

In his second point, Appellant claims that the unsolicited remark by Witness that "[e]verybody knows [Appellant] anyways in the Kansas Department of Corrections" should have resulted in a mistrial. Appellant claims prejudice insisting Appellant had to testify and thus admit that he had been convicted of murder in the State of Kansas. It is without question that a mistrial is a drastic remedy and should only be exercised in extraordinary situations where the prejudice against the defendant cannot be removed. *State v. Guske*, 501 S.W.3d 922, 923 (Mo.App. S.D. 2016). We review the refusal to grant a mistrial under an abuse of discretion standard. *Id.* at 923.

In this case, the trial court rejected the request for a mistrial concluding that the statement was vague enough that it did not identify Appellant as an inmate in the Kansas Department of Corrections. We agree. It was clear from the testimony that Witness was familiar with the Kansas Department of Corrections as he was in the Kansas penal system on multiple occasions. We do not know what the remark references, nor could the jury. As far as the jury knew, Appellant could have been a frequent visitor of Witness. The spontaneous remark did not force Appellant to testify or prejudice him in anyway. There is no connection between this murder and any criminal history of Appellant. Witness's statements were, at best, a vague reference to a corrections facility in Kansas and did not violate Appellant's right to be tried only for this murder. *See State v. Lutz*, 334 S.W.3d

---

[4] Victim's body was never found. It could have been the blow to the head with the wrench, the strangulation, the lack of care after the assault or any combination of the above that ultimately killed Victim. There was certainly sufficient evidence for a jury to find that Appellant strangled Victim in the perpetration of a rape that caused her death.

4

157, 160-62 (Mo.App. S.D. 2011) (where a police officer's meeting face-to-face with a defendant which allowed him to recognize the defendant in a surveillance video of a crime scene was not inadmissible evidence of prior bad acts).  Appellant's second point is denied.

The judgment is affirmed.


Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J. – Concurs

William W. Francis, Jr., J. – Concurs