THE STATE v. THOMAS J. GENTRY, Appellant.—44 S. W. (2d) 27.

Division Two, December 1, 1931.

284

*E. L. Alford* and *C. D. Balmer* for appellant.

*Stratton Shartel*. Attorney-General, and *Walter E. Sloat*, Assistant Attorney-General, for respondent.

WHITE, P. J.—Defendant was charged by information filed in the Circuit Court of Ralls County with burglary and larceny, was found guilty on both charges, August 19, 1930, sentenced to two years in the penitentiary for each offense, and appealed.

In the early morning of December 8, 1929, the general store of Richards & Company at Perry, Ralls County, was broken into and a quantity of merchandise of various kinds taken out. The burglary and robbery was actually committed by Francis Bryan, Franklin Barrett and James Gentry, the son of the defendant. The defendant was tried on the theory that he was accessory before the fact, planned the robbery and furnished the boys his car in which they rode to the place.

Defendant lived on his farm of about 400 acres, eight miles from Perry. He was a widower, and his family consisted of himself and his son James. The case is made out principally upon the evidence of Bryan and Barrett, and the sheriff and his deputy who recovered part of the stolen goods concealed near defendant's home.

This evidence was that about three weeks before the burglary Francis Bryan, twenty-two years old, who seemed to have no home, nor any immediate relatives, on the invitation of James Gentry came to the Gentry home and remained. Later, about three days before the burglary, Franklin Barrett, eighteen years of age, also without a home or family, came to the place. Soon after the arrival of Barrett the defendant, in a talk with Bryan, Barrett and James Gentry, said he was getting low on provisions and had to go out and get some. He said the young men should go to Goss's store and get some groceries. If they could not get in there to go to Richards Brothers' store. He explained that a glass in the rear of Richards' store was cracked, a board had been nailed on, and they could easily pull it off. James Gentry expressed his willingness to go. The three boys in Gentry's car drove to the place in the rear of the stores. Finding a light burning in the rear of Goss's store they went into Richards' store. James remained with the car while the other two boys carried down two armfuls each of clothing, shoes, canned goods and the like, to the car. That was about two o'clock in the morning. They drove back to Gentry's house and at Gentry's sug-

gestion they hid some of the goods in a cave, which appeared to be on his premises, and some in a hollow tree which was near but not on his premises. The cave was a hole in the the rock at the side of a "branch," six or eight feet deep, apparently just an ordinary cavity washed in a rock at the edge of the water.

All this was told by Bryan and Barrett. The defendant's counsel in long and rigid cross-examinations of them failed to shake their story, but showed that they were waifs having no occupation or place of abode; made them admit that they had sworn at a preliminary hearing that Thomas J. Gentry, the defendant, had nothing to do with the burglary and knew nothing about it. They said they lied about it at that time.

When Richards found his store had been burglarized, he procured a warrant for searching Gentry's premises. The sheriff and his deputy went to the place and found some of the goods identified by Richards as his own, in the cave and some in the hollow tree. Richards identified a shirt worn by the defendant as one of the shirts taken from the store. When the sheriff went to search the premises he asked Gentry about the cave. Gentry said he didn't know anything about it. After the sheriff had found the articles in the cave he told Gentry about it, and Gentry "took his hat off his head and laid it down and says 'I be damn I forgot about that place.'"

James Gentry and Thomas Gentry both were sworn and testified that Thomas Gentry had nothing to do with the crime. Defendant offered witnesses to contradict Bryan and Barrett about statements they had made out of court to the effect that Thomas Gentry did not participate in the crime.

I. Error is assigned by appellant to the action of the trial court in permitting proof of other crimes. One of them mentioned in the assignment was the burglary of the store at Florida, Missouri. While Barrett was on the stand he testified that Gentry said he was out of groceries and would have to get some. Then the witness continued: "So we went over to the Florida store." Counsel for defendant objected and the objection was sustained. Defendant entered no exception to any ruling. There was no ruling except to sustain the objection. That is all we find in the record about the burglary of the Florida store.

Appellant makes the further point that the evidence showing Gentry's suggestion of the places to hide the stolen goods was inadmissible, because proof of the crime of accessory after the fact, a different offense and not within the charge which was that of accessory before the fact.

The guilt of the defendant depended upon showing that he and the three young men had formed a conspiracy to commit the burglary. Any evidence of his attempt to hide the stolen property was competent to show that he was a party to the conspiracy. It tended to corroborate the testimony of Bryan and Barrett that he had planned a burglary, furnished a car to use in its commission; and the evidence that he wore some of the clothing obtained. It is intimately connected with the commission of the offense charged. Such evidence is always competent although it may tend to show the commission of another crime.

II. Appellant complains of error in giving instruction numbered 1, as follows:

"1. The court instructs the jury that all persons are equally guilty who act together with a common intent in the commission of a crime and a crime so committed by two or more persons jointly is the act of all and of each one so acting.

"And to make a person equally guilty with others who act together with a common intent in the commission of a crime it is not necessary that all the persons so acting together with a common intent in the commission of a crime be personally present at the commission thereof. If a person, though not actually present when a crime is committed, before the commission thereof advises, procures or encourages another person or persons to commit the same, then such person or persons who advise, procure or encourage the commission of such crime are equally guilty with the person or persons who actually commit such crime."

The first complaint is that the first paragraph of the instruction is a mere abstract declaration of law. It was a definition of the crime charged and it was not error to give it. It has been held no error to refuse instructions which state abstract propositions of law, but it is also usually not error to give them.

It is complained that the relative "who" in the second paragraph of the instruction relates to "others" and not to the defendant, conveying to the jury the information that he was equally guilty with the others who act together with a common intent, although he may not have entertained such common intent. The sentence in which that occurs in further definition of the crime is awkwardly framed, but the same sentence goes on to include "all the persons acting together with a common intent." The closing sentence of the instruction which particularly connects the defendant with the crime says that if a person, though not actually present when the crime is committed, advises, procures or encourages another person to commit the same, then such person is guilty. The instruction does not authorize a verdict. It simply attempts to place before the jury the

law and the conditions under which an accessory before the fact might be found guilty. There is no reason to think the jury would understand that the defendant could be found guilty unless he actually did participate in the conspiracy and intended to have the crime committed.

III. Error is also alleged in the giving of Instruction 2, by the State which told the jury that if they found beyond reasonable doubt that Thomas J. Gentry entered into a conspiracy with the other three men, naming them, "to burglariously break and enter into the store building belonging to the Perry State Bank, occupied by Richards & Co.," etc., . . . "and if you further find that in the execution, if such is the fact, of such conspiracy or common design, if any, the said Franklin Barrett or Francis Bryan, or either of them, did . . . feloniously, forcibly and burglariously break and enter into the said store building . . . with intent fraudulently to take, steal and carry away and convert to their own use and permanently deprive the owners thereof, any goods therein then and there being and kept in said building, you should find the defendant guilty of burglary as charged in the information."

Appellant makes the point that the instr. ction required the jury to find that Thomas J. Gentry entered into a conspiracy with others burglariously to break into the building, but it did not require a finding that it was done with the intent to steal. It is argued that there could be no burglary absent such intent, which the jury must find in order to convict.

Appellant cites Section 4048, Revised Statutes 1929, defining "burglary" in the second degree as breaking into and entering a building, the entering of which would not be burglary in the first degree, with intent to steal or commit any crime therein. Then if they intended burglariously to break into the building, the word "burglariously" carries with it the intent to commit some other crime. The dictionary definition of burglary, as well as the statutory definition, is the breaking into a building with the intent to steal or to commit some crime therein. The court in Instruction 3 defined "burglariously" as an intent to commit burglary. There is no complaint of failure to define "burglary." The defendant did not ask that it be defined. It is a word in common use and the ordinary jury would know what it means. The court was not required to define it, at least unless requested. Where an information charges the commission of acts which constitute a felony it is not necessary to aver that such acts were feloniously done. [State v. Burton, 324 Mo. l. c. 216.] Conversely, if an act is said to be feloniously done, certain

words descriptive of the act might be omitted. If such a word as feloniously be omitted from an information, with greater reason it may be omitted from an instruction where a jury is required to find the facts which constitute felony. [State v. Tipton, 307 Mo. 1. c. 515; State v. Rader, 262 Mo. 1. c. 134.]

In State v. Meeks, 39 S. W. (2d) 1. c. 768, citing the Tipton case and the Rader case, we held that an instruction authorizing a verdict of guilty of burglary, if the jury should find that defendant did "break and enter" a store "with intent to steal therein," was sufficient. Error was assigned because the instruction did not require the jury to find that defendant "burglariously broke into the said building." The omission of the word "burglariously was held unimportant, because the breaking in with intent to steal carried the same meaning. Since those expressions "burglariously," and "with intent to steal," used in describing a breaking into a building, mean the same, either may be used and the other omitted.

Further, appellant is not in position to complain of Instruction 2, because he asked and the court gave Instruction D-2, in which the expression is used, "intending to burglarize Richards' store," as if that expression described the crime. Also he asked and the court gave Instruction D-3, which told the jury that though they should find that defendant, "after the commission of the burglary of Richards' store, if you find that such burglary was in fact committed, aided Frankie Barrett, Francis Bryan and James Gentry, or any one or more of them, in concealing or destroying goods or merchandise alleged to have been stolen . . . these facts standing alone will not justify the jury in finding this defendant guilty of the charge for which he is on trial, but in order to convict the defendant the jury must find to a moral certainty and beyond a reasonable doubt that before the alleged burglary of said store the defendant, Thomas J. Gentry, incited, encouraged, instructed or procured the said Francis Bryan, Frankie Barrett and James Gentry, or one or more of them, to commit said burglary of Richards' store."

Not a word in that instruction indicated that the jury must find the intent to steal in addition to the intent to burglariously break in. It is framed on the theory that the word burglary carries with it the intent to commit another crime. Appellant cannot now complain that the State used the word burglary giving it the same significance which he gave it himself.

Appellant cites passage in 16 Corpus Juris, page 135, which reads as follows:

"To render one guilty as an accessory before the fact, he must have had the requisite criminal intent; and it has been said that he must have the same intent as the principal. It is well settled, however, that he need not necessarily have intended the particular crime com-

mitted by the principal; an accessory is liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him.''

The jury was required to find that the defendant entered into the common design *burglariously* to break into the building. Burglariously breaking into a building is breaking in with intent to steal or commit some other crime under the definition of Section 4048. And even if the specific intent to steal and carry away the goods entered the minds of Bryan and Barrett after they had broken into the building, defendant would be guilty of burglary just as they were guilty though his intent may have been to commit some other crime. It has been held that an allegation of breaking in and stealing is sufficient without any declaration of intent to steal; the inference is conclusive that when one breaks into a building and steals he breaks in with the intent to steal. [State v. Henley, 30 Mo. 513; State v. Taylor, 136 Mo. 1. c. 69; 9 C. J. 1050.]

IV. Complaint is made of Instruction No. 5 which told the jury that if the defendant was not guilty of the burglary as charged, and if they should find beyond reasonable doubt that he feloniously stole and carried away the clothing and other articles from a building described in the petition with felonious intent to convert to his own use, they should find him guilty of larceny. The objection was that it was predicated upon the actual presence of Gentry at the time and place. It is permitted to charge an accessory before the fact in the same form and terms as the person who is actually charged with the commission of the crime. The jury was fully instructed that they could find him guilty of the crime only if they found that he conspired with the others to commit the crime. The jury of course knew, because it was admitted, that the defendant was not present at the time; they knew and could not misunderstand by that instruction that they could not find him guilty unless they found the facts showing the conspiracy and his common design with the others who actually did the work. If that instruction was erroneous the error was in defendant's favor requiring the State to prove what the evidence disproved.

V. It is claimed that a case was not made out because the principal witnesses against the defendant were Bryan and Barrett whose character, and whose confessions of previous falsehoods about the same thoroughly discredited them. It is true they were contradicted by their former statements, sworn and unsworn. It was a matter for the jury to determine at which time they told the truth. These boys were waifs with-

out homes or occupations and subject to the temptations of that condition. Naturally they were easily drawn into the commission of crime; circumstances which must be taken into consideration. But there were other facts which tend to corroborate them. They used Gentry's car; they hid the stuff near his house; he was wearing some of the apparel which they stole; he first professed ignorance of the cave and later declared he had forgotten about it. We could not set aside the verdict in the face of positive, direct and circumstantial evidence such as this.

The judgment is affirmed. All concur.