**STATE of Missouri, Respondent,**

v.

**Eugene Hudson RUSH, Appellant.**

No. 44814.

Supreme Court of Missouri.

Division No. 1.

Feb. 13, 1956.

Mark M. Hennelly, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Winston Cook, Asst. Atty. Gen., for respondent.

DALTON, Presiding Judge.

By an amended information filed in the Circuit Court of the City of St. Louis, defendant was charged with burglary in the second degree and larceny under the Habitual Criminal Act with six prior felony convictions. Sections 560.070 and 556.280 RSMo 1949, V.A.M.S. He was acquitted of larceny, but convicted of burglary, second degree, as charged, and his punishment assessed at ten years imprisonment in the State Penitentiary. Section 560.095 RSMo 1949, V.A.M.S. He has appealed, but has filed no brief and we shall examine the assignments contained in his motion for a new trial. Supreme Court Rule 28.02, 42 V.A.M.S.

The State's evidence tended to show that on April 8, 1953, one Harold Firestone owned and operated a grocery store known as Firestone's Market, located at the northeast corner of the intersection of Goodfellow and Etzel in the City of St. Louis. About 6:45 p. m. Mr. Firestone personally placed some $325 in the outer portion of the store safe and locked the safe. A side door of the store opening on Goodfellow was padlocked on the inside and the main front door was locked with a Yale lock. All doors and windows were closed and locked when he left the store.

About 11:00 p. m. a police officer walking his beat and going north on the east side of Goodfellow saw a man who had been standing on the west side of Goodfellow north of Etzel, opposite the Firestone store, move across the street to the side door and, as the officer approached and called out "Police Officer," a man carrying a small box ran out of the store and ran north on Goodfellow, while the man who had just crossed the street ran back west across Goodfellow. The officer saw this man (appellant here) from a distance of 35 feet and sufficiently close to identify him, but the officer pursued the man with the box north on Goodfellow. One shot was fired in the air and one at the man, but ultimately the officer lost him and returned to the Firestone store, where he found appellant in the custody of another police officer from another district. This second officer resided on the south side of Etzel about 125 feet east of the Firestone store. He had just returned home, around 11:00 p. m. and gotten out of his automobile when he heard two shots fired. He stopped on the sidewalk and, within 30 seconds to a minute or two, he saw a man (later identified as appellant) run into a driveway beside a house across the street and down this driveway south between two houses and come running out of the driveway into Etzel. The officer hollered to him and exhibited a police badge and gun and asked him to identify himself and where he was "coming from" and what he was doing there. Appellant stopped and gave his name and exhibited his driver's license, which showed that his residence was in another section of the city, "all the way down on Madison." He didn't give any reason for being in that neighborhood and the officer told him he was under arrest. The officer took appellant to the intersection of Goodfellow and Etzel where he learned of the Firestone store burglary. There the first officer, who had discovered the burglary, identified appellant as the person whom he had seen cross Goodfellow to the side door of the Firestone store and then run west when the officer shouted "Police Officer" and started in pursuit of the man who came out of the store and ran north.

When appellant was first stopped on Etzel, the officer thought he saw appellant throw something away, but subsequently, after diligent search in the vicinity of the driveway, nothing was found. The owner

of the store and certain officers inspected the store premises after the arrest of appellant and found a large window pane broken out of a window on the east side of the store, 8 feet up from the ground, and there were vertical marks 6 to 18 inches long on the outside of the brick wall below the window. The window had been "knocked out" after the store had been locked up. The combinations were knocked off the outer and inner portions of the store safe. The outer part of the safe was open and $325 was missing. Two padlocks on the inside of the side door of the store opening on Goodfellow had been knocked off and the door was open. The officers found a large hammer, a chisel and a long steel punch near the safe and open door. Some $5 in scattered change and a black metal tray, later identified, was found in an alley north and east of the store. Appellant was taken to District 12 Headquarters where he was questioned. He said that he and another person had "planned this job in a northside tavern" and that the other party had carried the hammer and punch to the store. Appellant said he was the "lookout" and stood across Goodfellow from the side door. He had crossed the street to notify the person in the store, when he saw the officer approaching from the south. He said he ran west when his accomplice ran north, but immediately thereafter he "backtracked" east and south, where he was apprehended by the second officer. He said he had parked his Chevrolet automobile two blocks north on Goodfellow before the burglary, but it was not located by the officers. Appellant gave the name of his partner and accomplice as Joe Rizzo, however this proved to be an alias used by appellant himself. Appellant refused to give the true name of his accomplice. The following day appellant "clammed up" and denied any participation in the burglary and said the officers would have to prove it. The state's evidence further tended to show six prior felony convictions and discharges from sentences imposed thereunder.

Appellant's evidence tended to show that, on the evening in question, he was planning to meet a person with whom he had no appointment at the "Blue Room" in St. Louis, but the place wasn't where he thought it was and he had walked back north on Goodfellow to Etzel and then turned east in an effort to try to locate the place. He was walking east in an ordinary manner on the north side of Etzel when he was arrested. Appellant explained the circumstances of his arrest, as follows: He heard two shots and turned around, as the shots appeared to come from the corner of Etzel and Goodfellow. At that time a plain clothes officer crossed the street and asked his name and where he was going. He told the officer "To the Blue Room," which he had been told was at Clara and Etzel. He showed the officer his chauffeur's license, with name and address, which address he admitted was not in that vicinity. The officer asked him if he had ever been in trouble and he told the officer "he had done time." About that time a lady appeared and reported the burglary of the Firestone store. The officer then said that appellant's story, about going to the "Blue Room," "sounded fishy" and placed him under arrest. While appellant testified that certain police officers "beat him up," after his arrest and prior to the time he was "booked" at headquarters, he denied that he had ever made a statement to any one to the effect that he "was implicated in that burglary at all." He "never admitted this burglary." In accounting for the name Joe Rizzo, appellant testified: "He said I ought to know the name of the man I was with. I said, there was nobody with me. So finally I said if all you want is a name, Joe Rizzo is a name." Appellant later testified that the name Joe Rizzo was an alias he had used. Appellant admitted the six prior felony convictions and discharges from the sentences imposed as shown by the state and testified concerning a further felony conviction, grand larceny, not alleged or previously proven.

■ Error is assigned on the court's failure to direct a verdict for appellant at the close of all the evidence "since the state failed to carry the burden of the proof and did not make a case of burglary, sec-

ond degree and larceny." We need not again or further review the evidence. It was sufficient for the jury to infer and find that appellant, either acting alone or jointly with another, did wrongfully, forcibly and burglariously break into and enter the store building of Harold Firestone, located as stated, with the felonious intent to steal therein. The evidence shows that divers goods, wares, merchandise and personal property of value were kept and deposited in the building, to wit, a stock of groceries, general merchandise and $2,325 in money; and that $325 in money was carried away from the outer portion of the store safe. From the evidence tending to show that the store was forcibly broken into and entered and property stolen and carried away the jury could infer and find that it was broken into with the intent to steal therein. State v. Gentry, 329 Mo. 282, 44 S.W.2d 27, 31(6); State v. Shipman, 354 Mo. 265, 189 S.W.2d 273, 275. The evidence, including the admissions of appellant was sufficient to authorize the submission of the cause to a jury. State v. Reed, 329 Mo. 203, 44 S.W.2d 31, 32(2, 3); State v. Whitaker, Mo.Sup., 275 S.W.2d 316; State v. Kowertz, 317 Mo. 426, 297 S.W. 358, 361(4). As stated, appellant was acquitted of larceny.

Appellant complains of the failure of the court to strike certain testimony as prejudicial and in violation of appellant's "constitutional rights of non-crimination" and of the court's failure to declare a mistrial under the following circumstances. Officer O'Connor was asked what he *did* when he saw appellant come running from the driveway. He said he hollered across the street to appellant, advised appellant he was a police officer and appellant stopped. He asked appellant to identify himself and asked where he was "coming from," but that appellant "couldn't give me any logical explanation." Motions to strike and for a mistrial were made and overruled, but a further motion to disregard the last part as a conclusion was sustained and the jury directed to disregard "that part." The witness was then asked what was *said*. There was no objection to this question and the

witness answered: "He didn't give me any reason for being in that neighborhood." A motion to direct the jury to *disregard* this answer because prejudicial and in violation of appellant's "constitutional rights of non-crimination" was overruled. There was no motion to strike as not responsive, no motion for mistrial or for further relief. The record shows that appellant was not under arrest at the time in question, but the officer had heard two shots and had, subsequently, seen appellant come from that direction and run into a driveway between two houses and down the driveway into the street. When the officer spoke to appellant he thought he saw appellant throw something away. Not only was appellant not under arrest, he was not charged with an offense. Appellant did not remain silent. Instead, he promptly gave his name and produced his driver's license showing his name and his residence in another part of the city, but he gave no reason for his presence in the neighborhood. Subsequently, the officer testified that, when he asked appellant, "What are you doing here?", appellant said nothing about being on his way to the "Blue Room." Appellant's testimony at the trial was in agreement with that of the officer to the effect that appellant was not under arrest when the inquiry was made. As stated, appellant said that after he identified himself and told the officer he was going to the "Blue Room" and after he had reviewed the route he had taken from his home, the officer said it sounded "fishy" and arrested him.

The rule in this state is that silence of an accused when not under arrest, and in circumstances such that only a guilty person would have remained silent, may be shown, although after arrest or while in custody the evidence is inadmissible because the accused is under no duty to speak. State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 757; State v. Lovell, 235 Mo. 343, 353, 138 S.W. 523. Appellant's failure to explain his presence in the particular neighborhood under the circumstances stated was one of the facts and circumstances leading to his arrest and could be construed as evidence in the nature of an

admission against interest. The officer's inquiry was not one of impertinence or one deserving of no reply. See State v. Hamilton, 55 Mo. 520, 522. Since appellant was not under arrest, nor charged with a crime, the matter is not controlled by State v. Allen, Mo.Sup., 235 S.W.2d 294; State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, 755; State v. Bowdry, 346 Mo. 1090, 145 S.W.2d 127, 129; State v. Hogan, Mo.Sup., 252 S.W. 387, 388; nor State v. Goldfeder, Mo.Sup., 242 S.W. 403; nor is Section 19, Art. I, Const. of Missouri 1945, V.A.M.S., or Section 546.270 RSMo 1949, V.A.M.S., applicable. No reversible error appears from the court's failure to direct the jury to disregard the statement of the witness. State v. Battles, supra; State v. Lovell, supra; State v. Butler, 258 Mo. 430, 435, 167 S.W. 509.

■ Error is assigned upon the giving of Instructions Nos. 1, 2, 3, 4, and 7 on behalf of the state, however, the record fails to show that counsel for appellant objected to the giving of any of these instructions at the time they were given and read to the jury. In this situation nothing is presented for review on appeal. State v. Stroemple, 355 Mo. 1147, 199 S.W.2d 913, 916; State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 110; State v. Reich, 293 Mo. 415, 239 S.W. 835, 837. The transcript of the record does show a conference "at the Bench out of the hearing of the jury" after the state had closed its rebuttal evidence, and the following proceedings appear: "Mr. Hennelly (counsel for defendant): * * * May I have leave of Court to save my exceptions to the instructions until after the Court reads them. The Court: Yes, you may. (Thereupon the hearing was resumed in the hearing of the jury.) The Court: I take it that is all of the evidence. Mr. Hennelly: Yes, Your Honor, that is all of the evidence. (This was all of the evidence offered and introduced in the cause.)" The record then shows that twelve instructions were given and read to the jury.

Rule 28.01 of the Rules of Criminal Procedure provides that "In criminal cases formal *exceptions* to rulings or orders of the court shall not be necessary and it shall be sufficient to make *objections* in the manner provided for civil cases." (Italics ours.)

Supreme Court Rule 3.21 provides that "Objections to instructions shall be made before the case is finally submitted to the jury, and shall be made in the manner provided in Section 122 [V.A.M.S. § 510.210]. (Supplemental to Sec. 105(a), 1943 Act [V.A.M.S. § 510.300, par. 1])."

Section 510.210 RSMo 1949, V.A.M.S., provides: "Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, *at the time* the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take *or his objection to the action of the court* and his grounds therefor except it shall not be necessary to state grounds for objections for instructions; * * *." (L.1943, p. 353, § 122, A.L.1947, V. I, p. 227.)

Section 510.300 RSMo 1949, V.A.M.S., provides that "The court shall afford ample opportunity for counsel to examine the instructions *before* the same are given and to make objections out of the hearing of the jury."

On this record the alleged errors in the instructions are not reviewable, however, we have examined each of these instructions in the light of the complaints specified in the motion for a new trial and we have reached the conclusion that none of them are erroneous or prejudicial on the grounds specified.

■ Assignments 2, 3, 4, and 5 of the motion for new trial concern the late endorsement of witness Klos and certain matters arising in connection with his testimony. It is first contended that the endorsement was not in good faith and that the court erred in permitting the endorsement after the jury had been empaneled. The record shows that, after it appeared that the state's witnesses were being cross-examined in an effort to show an alleged delay in taking appellant to police head-

quarters after his arrest, the witnesses having denied that there was any delay, counsel for the state asked to endorse the name of Richard Klos, "clerk in the record room where the criminal records of the Police Department are kept" and custodian of the official records of the department, in order to show the hour appellant "was booked." The endorsement was permitted and the witness testified. The evidence was cumulative and confirmatory of oral testimony. No abuse of the trial court's discretion in the matter appears from the record. No prejudice to appellant is suggested except his claim that he was not given "the right of deposition or investigation." The hour, when appellant "was booked" at headquarters, was not material to any issue subsequently submitted to the jury and no evidence of bad faith on the part of counsel for the state or prejudice to appellant appears from the fact of the endorsement of the witness or from the proof of the fact mentioned. See State v. Baker, 318 Mo. 542, 300 S.W. 699, 701; State v. Lindsey, Mo.Sup., 80 S.W.2d 123, 126(7–9).

█ It is further contended that the court erred in permitting the witness to use a projection machine and screen and to interpret entries on the screen without having the microfilm record marked as an exhibit and because the exhibit was hearsay and no foundation had been laid. It is further contended a mistrial should have been declared because it was suggested before the jury that part of the film was "not pertinent" and because the use of the screen and film in the courtroom prejudiced the rights of appellant. The testimony of the witness tended to show that because of the bulk of the original police reports, the records were microfilmed and the films kept as the official records of the department; that the witness had the film record of appellant's arrest in court and had the means to show it on a screen; but that when the film would be projected on a screen, matters other than the hour of "booking" would appear and that such other matters could not be excluded. The court permitted the witness to look at the screen (which could not be seen by the jury) and

to read from the screen the hour that appellant was "booked" at police headquarters, District 12. The witness (reading the screen before counsel and the court) testified before the jury that the record showed the time of the arrest and "booking" as 11:05 p. m., April 8, 1953. Accordingly, the projected readable shadow on the screen as projected from the microfilm became a part of the record in this case by the testimony of the witness. No improper prejudice to the right of appellant appears, and particularly so, since the particular hour of appellant's arrest and "booking" was at no time material to any issue submitted to the jury. The evidence only tended to confirm the oral testimony that there was little or no delay in taking appellant to headquarters after his arrest.

█ Error is assigned on the court's failure to instruct the jury to disregard certain testimony of officer Eresh. After a showing had been made that appellant's statement at police headquarters after his arrest was voluntary, the witness was asked what, if anything, appellant said concerning the burglary of the Firestone Market. The witness replied that appellant stated "he was acting as a lookout," but that appellant *refused* to name his accomplice other than to give the name of Rizzo, which was a fictitious name. Counsel asked to have the testimony stricken on the ground that it was "a violation of defendant's constitutional rights of non-crimination." It had already been shown by several witnesses that appellant had, after his arrest, stated that he was the lookout for a person whom he said was Joe Rizzo and that Joe Rizzo, who was his partner and accomplice, was in the store when the police officer arrived. There had also been testimony that appellant had admitted that the name Joe Rizzo was an alias which appellant himself had previously used. Earlier in the trial another officer had testified without objection that he had tried to persuade appellant to give him the correct name of his accomplice, but that appellant gave him no other name than Rizzo. It is apparent that the court's refusal to strike the testimony in question showing that appellant *refused* to

disclose the true name of his accomplice, after admitting that he was a lookout man for such a person, did not violate any of appellant's constitutional rights under Section 19, Art. I, Const. of Mo.1945 nor under Sec. 546.270 RSMo 1949, V.A.M.S.

■■■ Error is further assigned on the court's action "in permitting witness Malloy to read from the Circuit Court Record Book before it had been marked as an exhibit because such testimony was hearsay and no foundation had been laid for its introduction." Witness Malloy was a clerk in the office of the Circuit Clerk for Criminal Causes and, after he had identified the book in his possession as one of official records of the Circuit Court of the City of St. Louis, his attention was directed to a certain page of the record and he testified that he found there an entry pertaining to Eugene Hudson Rush, alias Jack Rizzo. When he was asked to read from the record to the court and jury, counsel objected as follows: "It is hearsay and a violation of the constitutional rights of defendant. The proper foundation has not been laid for its introduction at this point." The objection was overruled and the record of appellant's conviction for larceny of a motor vehicle was read into the record. Appellant subsequently, when testifying in his own behalf, admitted that he had "been convicted of all the crimes which have been put here in evidence by the Assistant Circuit Attorney." In view of appellant's subsequent admission of the facts shown by the record in question no prejudicial error appears. State v. Kimbrough, 350 Mo. 609, 166 S.W.2d 1077, 1079.

■■■ Other errors assigned include one based upon a contention that the Assistant Circuit Attorney was permitted to argue facts not shown by the record, but the objection was based upon a misunderstanding as to the testimony. The record sustains the argument and no error appears. Another assignment is based upon the court's refusal to supply answers to certain written questions which were submitted by the jury after the cause was submitted. Answers to these questions would have required a transcript of the testimony of certain witnesses heard by the jury and would also have required the statement of certain conclusions to be drawn from the testimony. The court did not err in refusing the requests.

■■■ A final assignment concerns the closing argument of counsel for the state to the effect that any one accused of crime could say he is "not guilty" and if there are admissions in the case, he could say "they beat it out of me" and, if that is conclusive on the state, "let's close the courts up"; and that "Hall could have got up and said he was beaten by the FBI, if that is a defense." On motion, the court directed the jury to disregard the last statement, but denied a request of a mistrial. The argument was in reply to argument concerning alleged police brutality. The matter was within the sound discretion of the trial court and no abuse of discretion appears. State v. McHarness, Mo.Sup., 255 S.W.2d 826, 830(9).

The amended information properly charged appellant with the offense of Burglary, second degree, under Habitual Criminal Act. The verdict is in proper form and responsive to the charge in the amended information. Appellant was granted allocution and the sentence and judgment are responsive to the verdict. A review of the entire record discloses no prejudicial error. The judgment should be affirmed. It is so ordered.

All concur.