STATE of Missouri, Respondent,

v.

Robert Eugene DOEPKE, Appellant.

No. 49036.

Supreme Court of Missouri,

Division No. 1.

Nov. 14, 1962.

Taken as submitted by appellant.

Thomas F. Eagleton, Atty. Gen., James Wilson Spencer, Special Asst. Atty. Gen., Jefferson City, for respondent.

HOLLINGSWORTH, Judge.

By information filed in the Circuit Court of St. Louis County, defendant was charged with robbery in the first degree by means of a dangerous and deadly weapon and, in said information, was also charged under the habitual criminal act with having been priorly convicted of two charges of burglary in the second degree, for which he had been sentenced to and thereafter discharged from imprisonment in the state penitentiary upon due compliance with such sentence. At trial, defendant, in the presence and with the consent of his counsel, and outside the hearing of the jury, admitted the aforesaid prior convictions as pleaded in the information, but announced his desire to stand trial on the merits. After hearing the evidence submitted upon the issue of his guilt of the robbery of which he was charged, the instructions given by the court and the arguments of counsel, he was by the jury found guilty as charged. Following the filing and overruling of his motion for new trial, defendant was sentenced to the custody of the Missouri Department of

Corrections for a term of ten years. He has appealed, but no brief has been filed in his behalf. We, therefore, review the valid assignments of error set forth in his motion for new trial, as required by S.Ct. Rule 27.20, V.A.M.R., and the portions of the record required by S.Ct. Rule 28.02.

██ The first and second assignments allege error, respectively, in (1) the overruling of defendant's motion for directed verdict filed at the close of the State's case in chief, and (2) the overruling of a like motion filed at the close of all of the evidence in the case. Both assert insufficiency of the evidence to support the verdict. The first was waived by the offering of evidence by defendant following the close of the evidence in behalf of the State. State v. Hutchin, Mo., 353 S.W.2d 701, 702. The second requires a review of the evidence. In determining its sufficiency to support the verdict, we consider as true the evidence favorable to the State and the inferences reasonably to be drawn therefrom; the evidence to the contrary is rejected. State v. Hutchin, supra, loc. cit. 702 [2-4].

█ The evidence thus reviewed warranted a finding of the following facts:

On November 25, 1960, Mrs. Alma Jung resided with her husband and three sons in a building situate at 11102 Warson Road in St. Louis County, from which building she also operated a confectionery store. Between 1:30 and 2:00 p. m. of that day, when she was alone in the home and engaged in ironing in the living quarters of that building, a man drove up to the side of the building in a red convertible Mercury automobile and stopped "right in front" of a window about 20 feet distant from her ironing board, enabling her to observe him closely. Thinking him to be a customer, she awaited his entrance into the store. When he rang the entrance bell, she finished the piece she was ironing, walked into the store and asked the man what he wanted. He said, "Give me your money." Startled, she asked him to repeat what he said, he looked down at his hand and she then saw that he was holding a revolver in his left hand. He repeated, "Give me your money." She asked him if he knew what he was doing. He said, "Do you want me to use this?" She went to the cash register. A counter then stood between her and the man. Seeing two loaded cartridges in the chamber of the pistol, she opened the register and gave him the bills therein; he declined the "change". The bills given him totaled $38.00 and consisted of 1 ten, 2 five, and 18 one dollar bills. He then directed her to lie down upon the floor. She squatted down behind the counter. He insisted that she lie down, saying that he would use the gun if she did not. She did as directed and he walked from the store. She ran into the kitchen and watched him leave in the car. As he left she undertook to get his license number and was able to read all of it except one digit.

During the course of the robbery as above outlined, Mrs. Jung noticed the defendant was about five feet, three or four inches in height, had a pimply complexion, wore a hat like that worn by sailors, khaki pants and a gray jacket, zipped up; his voice sounded like that of a man who had been drinking, but she did not smell any odor of liquor. She reported the matter to the St. Louis County police immediately after defendant drove away. That report was broadcast by the police department's dispatcher at 1:58 p. m. About 3:15 p. m., a police officer of the City of Olivette, riding in a police car, in St. Louis County, who had heard the report and description of the man and the car as given therein, saw defendant driving a red Mercury car such as had been described in the radio report in the "ninety-four hundred block" of Olive Street Road. He pursued defendant and effected his arrest approximately two miles from Mrs. Jung's store. Upon search of defendant's person, thirty-eight dollars in currency were found in his left front pocket. It consisted of 1 ten, 2 five, and 18 one dollar bills. Ninety-one cents were found in his right front pocket.

Defendant, when arrested, wore a gray jacket with a zipper in front, light gray sport shirt, tan trousers and tan shoes; no hat nor weapon was found. The arresting officer thereupon delivered defendant and the money and papers found upon his person and in the car to a St. Louis County policeman, who took him to the St. Louis County police station. Later the red Mercury car was also taken by the St. Louis County police. That evening defendant and four other men standing alongside him were viewed in a police "line up" by Mrs. Jung. She there positively identified defendant as the man who drove the red Mercury car to her store and who came into the store, robbed her and fled from the store in the Mercury. She also identified the clothing worn by him at the "line up" as being that worn by him when he committed the robbery. She also identified the red Mercury convertible in which defendant was riding when arrested as being the car in which he drove to and away from her store at the time of the robbery; and she likewise pointed out and identified defendant at the trial as the man who robbed her and identified the clothing then exhibited to her as that worn by defendant at the time of his arrest and as he stood in the "line up" as being identical with that worn by him during the robbery.

Leroy Mueller, who operated a trucking and hauling business "next to" Mrs. Jung's store, saw a man theretofore unknown to him drive up in a red Mercury convertible car to Mrs. Jung's store, about 1:30 to 2:00 p. m. on the day of the robbery, and park near his (Mueller's) office. The man and car were 100 to 120 feet from Mueller. Mueller watched this man for several minutes. The man kept looking back and forth—east and west. Mueller again saw the same man in a police "line up" similar to that above described and saw a Mercury car in custody of the police. He identified the man and the car viewed by him, respectively, as the defendant and the red Mercury in which defendant drove up to Mrs. Jung's store on the day of the robbery;

and at the trial he pointed out and positively identified defendant as the man who drove the red Mercury convertible up to and parked alongside Mrs. Jung's store.

Defendant did not testify. Testimony given in his behalf by his mother and grandmother was directed to the establishment of an alibi in his behalf; and the jury was duly instructed upon that issue. Such additional evidence as may be material to certain of the assignments of error set forth in the motion for new trial will be hereinafter stated.

The evidence above narrated unquestionably made a submissible issue of defendant's guilt of robbery in the first degree as charged in the information. Section 560.120 RSMo 1959, V.A.M.S. (to which revision all statutory references herein refer); State v. Childers, Mo., 313 S.W.2d 728, 729–731. The trial court did not err in overruling defendant's motion for a directed verdict filed at the close of all of the evidence.

■ The third assignment is that the trial court erred in overruling an objection of defendant made during interrogation of Mrs. Jung, wherein the prosecuting attorney asked her what unusual had happened on November 25, 1960, to which question defendant objected as calling for a conclusion of the witness. The court overruled the objection. The record shows that the answer of the witness to that question merely began the recital of events pertinent and relevant to the establishment of the issue of defendant's guilt: The error, if it was error, was trivial and definitely not prejudicial. The assignment is overruled.

■ Assignments 4, 5, 6 and 7 state, respectively, that "the court erred in giving and reading to the jury" Instructions 1, 3, 4 and 5. Such assignments fail to comply with the requirements of S.Ct. Rule 27.20 and present nothing for review. State v. Bannister, Mo., 339 S.W.2d 281, 283.

Defendant's final assignment (8) reads: "The Court erred in overruling the objection of the defendant to the argument of the Prosecuting Attorney when, during the closing argument, he by reference referred to the fact that the defendant had not taken the witness stand and testified. In effect, the Prosecuting Attorney stated in answering the argument of the defendant's counsel, that if one of the juror's children should happen to be arrested in a red Mercury convertible that in that event, your child would not say what the defendant says."

The transcript shows that in cross-examination of one of the police officers who assisted in the arrest of defendant, counsel for the defense insisted upon the officer stating what defendant had told him following his arrest. The officer at first testified that defendant "didn't tell me anything." Finally, upon further cross-examination upon that phase of defendant's arrest, the officer stated: "If I remember exactly, he said, 'I haven't got a gun', then I asked him in relation to the robbery, what he knew about the robbery that occurred at Lindbergh and Lackland and he said, 'I don't know anything about a robbery', and then I asked him where he was coming from and he says, 'Well, I will wait until I get an attorney to do any more talking', and he told me from then on all he would tell me was his name and his address." Counsel for defendant made no objection whatever to that answer, but on the contrary continued to press the witness as to further statements then and there allegedly made by defendant. In that state of the record, the prosecuting attorney in his closing argument said: "Now, he (counsel for defendant) says, 'What if your boy was in a red convertible?' He personalizes it. 'What if your boy was taken in a car by the officers? What do you think he would do if he had been home with you?' If your boy had been home with you immediately prior to the time of the hold-up, don't you think he would say, 'Officer, I'm sorry, I was home with my mother and my grandmother and I can account for my whereabouts'?

But not Doepke. Doepke wants to say nothing until he talks to his lawyer."

Counsel for defendant then objected upon grounds: "There is no duty on the part of an arrested party to make any statement to the police. I ask that the jury be instructed to disregard that." The court overruled the objection.

There can be no question that as a general rule defendant was not required to make any statement to the police following his arrest and the State would not be entitled to refer to his failure or refusal to do so. State v. Allen, Mo., 235 S.W.2d 294, 296; State v. Rush, Mo., 286 S.W.2d 767, 771. However, the testimony of the police officer as to the statements made by defendant was brought out solely by and through persistent cross-examination by counsel for defendant. Under the circumstances here shown, it would seem that defendant is in no position to complain of them. But, be that as it may, the objection made to them in the motion for new trial, to wit: that the argument of counsel for the state *amounted to reference to the fact that defendant had not taken the witness stand* is, on its face, devoid of merit. By no stretch of reasoned imagination can the statements allegedly made by defendant, as used in the context of the closing argument of the prosecuting attorney and in answer to argument made by counsel for defendant, be construed as a reference to his failure to testify at the trial. The assignment is overruled.

The information is in due form. § 560.-120. The verdict is responsive to the issues and the punishment is within the limits provided by law. §§ 560.120, 560.135, 556.280. Defendant was duly arraigned and entered a plea of not guilty. He and his counsel were present throughout the trial at all stages of the proceedings. He was granted allocution and the judgment is in due form.

The judgment is affirmed.

All concur.