**STATE of Missouri, Plaintiff-Respondent,**

v.

**Gerald RICHARDSON, Defendant-Appellant.**

**No. 14614.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 5, 1987.

**312**

Louis J. Nolan, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Kurt A. Hentz, John M. Morris, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant Gerald Richardson guilty of possession of marijuana, a controlled substance, § 195.020, RSMo 1986, V.A.M.S., and he was sentenced, as a prior offender, to five years' imprisonment. Defendant appeals.

Defendant's sole point is that the trial court erred in denying his motion for a mistrial. The motion was made by defense counsel during the prosecutor's redirect examination of the state's first witness, police officer W.J. Norrell. The motion was based on an improper question asked by the prosecutor to which the defendant's objection was sustained and which the witness did not answer. To place the incident in proper perspective, it is necessary to consider the testimony which officer Norrell had given earlier on direct and cross-examination.

The information charged that the offense occurred on August 19, 1984. Norrell testified that on that date, at 3:00 a.m., he was a patrolman for the Kimberling City Police Department and was on patrol with auxiliary officer Lownsberry. The officers had received a radio report that defendant was approaching Kimberling City and was driving erratically. When defendant reached Kimberling City the officers observed his manner of operation of the Lincoln and again it was erratic. The officers followed defendant in the patrol car and stopped him. Norrell asked defendant to step out of the car and asked him for his driver's license. Norrell detected a strong odor of alcohol on defendant.

Defendant, after leaving his car, was unsteady on his feet and Norrell administered a "field sobriety test" consisting of a balance test and the "finger-to-nose" test. Defendant "didn't do very good on either." Norrell placed the defendant under arrest. Norrell administered the Miranda warnings to defendant at the scene of the arrest.

Norrell then drove defendant to the police station in the patrol car. Officer Lownsberry, with defendant's consent, drove the Lincoln to the station. Defendant was given a breathalyzer test and Norrell told him that he would be charged with driving while intoxicated and that his bond would be $300. Defendant reached into his pockets in order to obtain the $300 for the bond.

According to Norrell, defendant took "a wad of bills" from each of three pockets, his left front pocket and his left rear and right rear pockets. Norrell said, "After that [defendant] took a marijuana pipe out of his left front pocket and placed it on the table and then stopped as if that was all. I had observed him earlier with his hand in his pocket and trying to reach around what appeared to be a bag or a puffy substance in his pocket there, so I asked defendant to take everything out and put it on the table. Finally he did, reluctantly, and it was a bag of marijuana."

On cross-examination Norrell testified that defendant "hesitated on one pocket. He appeared to have trouble getting things out of his pocket because the pants pockets appeared to be tight. He was reluctant to take the bag of marijuana out of the right front pocket."

On redirect examination by the prosecutor, Norrell said that the defendant told him that he left the Swiss Villa bar at 11:45 p.m. The following then occurred:

Q. [By the prosecutor] Did you ask the question, "What time is it now?"

A. Yes, sir.

Q. And what answer did he give?

A. 12:15 I believe it was.

Q. Did the defendant appear to be disoriented?

A. Somewhat, yes.

Q. *At any time did the defendant tell you that this was not his marijuana?*

MR. WILLIAMS [defense counsel]: Objection, Your Honor. May we approach the bench?

THE COURT: Yes.

(Counsel approached the bench and the following proceedings were had:)

MR. WILLIAMS: I'm going to ask for a mistrial at this point. The defendant—the state has just commented on the defendant's failure to comment or respond in this situation. It's already been testified that he's been given his Miranda warning, and the fact that he chose to exercise his right to remain silent on this issue I think is violate [sic] of his constitutional rights. I'd ask the court to declare a mistrial at this point.

[Prosecutor]: That's not the way I intended it, but that may not have been the way it came across.

THE COURT: Well, I will sustain the objection, deny the motion for mistrial.

The foregoing incident took place before the opening statement of defense counsel and the presentation of defendant's evidence. Defendant took the stand in his own behalf and presented an explanation for his possession of the marijuana. The jury, by its verdict, rejected that explanation. Although that explanation, as will appear, may tax credulity, the state had no right to comment upon defendant's exercise of his constitutional right to remain silent. This court holds that the question itself, under the circumstances here, was such a comment and that the trial court

abused its discretion in not sustaining the motion for mistrial.

Defendant, who admitted that he had a prior felony conviction for possession of marijuana, testified that on the evening of August 18 defendant, Polly Miller, Lisa Claybull and Alan Kraus had some drinks and listened to the band at the Swiss Villa. About midnight the foursome went to Alan's house, which was about a mile from the Swiss Villa and eight miles from Kimberling City.

Defendant said, "They put on some movies and I lay down on the divan and went to sleep. I had change and money in my pockets and I took them out and laid them on the coffee table in front of the divan because there was quite a bit of change in my pockets. It was bothering me and I couldn't sleep it was so heavy. I did not have a pipe or bag of marijuana in my pocket. I first saw the pipe and marijuana at the Kimberling City police station.

"After I went to sleep Polly woke me and told me she was ready to go home. Everybody else had left the room. The only light in the room was the light from the tv. I grabbed my stuff up and I drove Polly home. I grabbed it off the coffee table and put it in my pocket. I did not see the pipe or bag at Alan's house.

"At the police station officer Knapp asked me to take the breathalyzer and I did. Knapp said I blowed a .13. Knapp told officer Norrell that. Norrell asked me if I had bond money. He said the bond money would be $300. I reached in my pocket. The money was in my front pocket. Also in my front pocket was a bag and this pipe. I had not seen those substances or that pipe prior to this time."

One of the trial court's instructions, given on behalf of the defendant, told the jury: "If you find that the defendant was not aware of the presence and nature of the marijuana or if you have a reasonable doubt as to whether the defendant was aware of the presence and nature of the marijuana, then you must find the defendant not guilty." If the jury had accepted defendant's version, compliance with the

instruction would have resulted in an acquittal.

The prosecutor's question, italicized above, was improper, a fact recognized both by the defense counsel who objected to it and by the trial judge who sustained the objection.

In *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 2181–2182, 65 L.Ed.2d 222 (1980), the Court said:

"In [*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)], we held that the Due Process Clause of the Fourteenth Amendment prohibits impeachment on the basis of a defendant's silence following Miranda warnings. The case involved two defendants who made no postarrest statements about their involvement in the crime. Each testified at trial that he had been framed. On cross-examination, the prosecutor asked the defendants why they had not told the frameup story to the police upon arrest. We concluded that such impeachment was fundamentally unfair because Miranda warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him, 426 U.S., at 618–619, 96 S.Ct. at 2245; see *Jenkins v. Anderson*, 447 U.S. 231, 239–240, 100 S.Ct. 2124, 2129–2130, 65 L.Ed.2d 86.

*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all."

In *Anderson* the defendant, charged with murder, was arrested while driving a stolen car owned by the victim. After receiving Miranda warnings, defendant told the arresting officer that he stole the car on a street two miles from a bus station. At the trial defendant testified that he stole the car from a parking lot "right next to the bus station." The Court held that cross-examining the defendant concerning his statement to the officer was not unfair, was not a use of silence, and did not constitute a violation of the principle enunciated in *Doyle*.

In *State v. Stuart*, 456 S.W.2d 19 (Mo. banc 1970), the defendant was tried for burglary and stealing. During direct examination of the arresting officer by the prosecutor, the witness testified that defendant had been given the Miranda warnings. At the end of the examination a juror asked this question: "Did either one of these guys claim that money?" The witness answered, "To the best of my knowledge, no."

On appeal the defendant contended that the answer violated the privilege against self-incrimination afforded him by Mo. Const. art. I, § 19. Defendant admitted that the error had not been preserved in the trial court.

The Supreme Court held that the colloquy between the juror and the witness violated the privilege and constituted plain error. At p. 22 the court said:

"The law is established in this state that the silence of an accused while under arrest is not admissible against him because he is under no duty to speak.... The cases in which this rule of law has been applied are cases where the accused was asked about the alleged crime or where someone made a statement about the alleged crime in the presence of the accused.... In the instant case no question was asked of the defendant or statement made in his presence. Here, by his silence, he failed merely to deny or explain his possession of the property by claiming it as his own when he had an opportunity to do so while under arrest. We now hold that an accused's failure to volunteer an exculpatory statement is not admissible as an admission; that it may not be shown that by his silence he failed to deny or explain while under arrest an incriminating fact as to which no question was asked.... The admission of such evidence constitutes an inva-

sion of an accused's constitutional rights...." (Authorities omitted.)

The incident in *Stuart* is quite similar to the incident at bar and both incidents took place during the presentation of the state's case-in-chief. It is true that in *Stuart* the witness answered the question and that the question in the case at bar was not answered.

In *State v. Nolan,* 595 S.W.2d 54 (Mo. App.1980), defendant was convicted of rape. The defense was consent. During cross-examination of the defendant the prosecutor asked him when he first told anyone after his arrest that the victim had consented and whether he had told the police that she had consented. The defendant had made no statement to the police. The defendant objected to these questions and moved for a mistrial. Although the questions were objected to, the matter was not preserved in defendant's motion for new trial. This court, holding the admission of the evidence to be plain error, granted a new trial. At p. 56 the court said:

"Impeachment by showing post-arrest silence violates the self-incrimination clause of the fifth amendment to the Federal Constitution, article 1, § 19 of the Missouri Constitution, and also results in the denial of constitutional due process. *State v. Roth,* supra, 549 S.W.2d [652] at 655. The state may not use such silence as affirmative proof or to impeach the defendant's testimony. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Pogue,* supra, 563 S.W.2d [544] at 549. We hold that showing defendant's silence after his arrest was not proper to impeach his version of the incident."

The state's brief, seeking to distinguish *Nolan,* asserts that it is inapplicable here because defendant Richardson "chose not to remain silent in that he elected to make other statements to the police while in custody." That argument has no support in the record.

The fact is that the only statements made to the police by the defendant following his arrest and receipt of the Miranda warnings were the following: When officer Norrell, at approximately 3:20 a.m., asked defendant what time it was, defendant said, "around midnight, 12:15." When Norrell stopped defendant, defendant said that he had been at Swiss Villa and that he left there at 11:45. Defendant gave permission for officer Lownsberry to take defendant's car to the police station. Defendant asked "what time is it now." Defendant asked what the reading was on the breathalyzer. Defendant said he had the bond money on him.

None of the foregoing statements attributed to defendant mentioned marijuana or any of the circumstances surrounding his possession of the marijuana. It is true, as held in *Anderson v. Charles,* supra, that the ruling in *Doyle* "does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. *As to the subject matter of his statements* the defendant has not remained silent at all." (Emphasis added.) *Anderson,* supra.

Here neither the marijuana nor the circumstances surrounding his possession of it was "the subject matter of [defendant's] statements." As to those matters, he remained silent and that silence, under *Doyle* and *Nolan,* could not be used to impeach him. A fortiori that silence could not be shown as a part of the state's case-in chief.

The state argues that any error is harmless because the prosecutor's question was not answered. The general rule is that when an improper question is asked but not answered, no prejudicial error occurs. *State v. Gilmore,* 681 S.W.2d 934, 942[15] (Mo. banc 1984); *State v. Williams,* 652 S.W.2d 102, 110[11] (Mo. banc 1983). That general proposition is supported by many Missouri cases collected in 16 Missouri Digest, Criminal Law, Key No. 1170½(3).

On the other hand, it is also well settled that "as a general rule defendant was not required to make any statement to the police following his arrest and the State would not be entitled to refer to his failure

or refusal to do so." *State v. Doepke,* 361 S.W.2d 689, 693[7] (Mo.1962). To similar effect see *State v. Davison,* 457 S.W.2d 674, 676[2] (Mo.1970).

In *State v. Butler,* 512 S.W.2d 466 (Mo. App.1974), the prosecutor, in his closing argument, said: "Believe me, I am not arguing that he had to tell anybody. I am simply saying that he didn't. He kept this his little secret until he ..." The court, in holding the remarks to be prejudicially erroneous, said, at p. 469: "[T]hey did refer to that time while defendant was under arrest, and in effect, inferred [sic] defendant's guilt because of his failure to then protest his innocence."

In the case at bar the prosecutor's question, although unanswered, sought to elicit from the witness the fact that the defendant was silent. The question did not seek to elicit a prior inconsistent statement. There was no evidence that any prior statement, consistent or otherwise, had been made by the defendant with regard to his possession of marijuana. The only answer the prosecutor reasonably could have anticipated was "no." The only answer which would have been favorable to the state was "no."

The question was more than a question. It was an unmistakable reference to, and an improper comment upon, defendant's exercise of his right to remain silent. The fact that the question was unanswered did not remove its prejudicial effect.

The judgment is reversed and the cause remanded for new trial.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.